[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 545 
Plaintiff seeks a judgment granting her a right of visitation. She is the maternal grandmother of the infant. Relief was granted to her pendente lite by order dated November 19, 1948. Contempt proceedings were later instituted against the father of the child, charging violation of the temporary order. Both matters have been fully heard and are herein determined.
I regret that I must conclude that plaintiff cannot be granted the relief which she seeks on her complaint.
The parents of the child were married in 1941. The father was then in military service. The mother, except for periods when she lived with her husband at his posts of duty, lived with the plaintiff. The child was born on February 16, 1945, and the mother and the child lived with plaintiff from then until July 1, 1945. At that time, the mother and child joined the father in Massachusetts where he was then stationed. All three returned to Newark in the early part of August, 1945, to attend the funeral of the mother's father. The mother became ill on the night of the funeral and died on September 20, 1945.
Plaintiff was engaged in business and by reason thereof and the emotional disturbance resulting from the deaths of her husband and daughter, was not able to care for the child. Plaintiff's brother undertook such care for a period of about two weeks and then the father of the child took it to the home of the paternal grandparents. The father was separated from the military service on October 17, 1945, whereupon he joined the household of his parents. In March, 1947, the father remarried and since that time the child has resided with him and his present wife. On June 24, 1949, during the pendency of these proceedings, the wife obtained a judgment of adoption of the infant.
Plaintiff visited the infant with regularity while it was at the home of the paternal grandparents. Upon the remarriage, *Page 546 
however, the father forbade visitation by plaintiff and plaintiff did not see the child until the temporary order referred to above, dated November 19, 1948. Within a short time after the remarriage, the father became enmeshed in litigation with his own father and apparently the paternal grandparents have not since visited the child.
The defendants explain their position with reference to the visitation by plaintiff in this way. They say that when they returned from their honeymoon, the child was found to be nervous and stuttering; that they received medical advice to cut the child's ties with the past; and that upon doing so, the child returned to normal. The child, of course, was only two years old at the time of the alleged manifestations, and there is nothing in the record to suggest that visitation by the plaintiff was causally connected therewith. The defendants make many charges along the theme that plaintiff sought to alienate the child from them but the charges are not substantiated by the proof.
In support of the claim that visitation by plaintiff upset the child, the father caused a recording to be secretly made of one of the visitations made under the court order. The avowed purpose of the proof was to discredit plaintiff's testimony that the visitation was without incident. The recording revealed that plaintiff treated the child with natural affection and understanding while the behavior of the child was incredibly poor. The recording convinced me that the father conditioned the child to abuse and insult its grandmother in a manner wholly unnatural for an infant. The father was present throughout the meeting and, although he, unlike plaintiff, knew that the incident was being sound-recorded, made no respectable effort to curb the child or to inspire a behavior which the situation of the principals would normally require. No father would permit a child so to treat any adult, let alone a grandparent. A child does not normally so react. I have no doubt that, barring the training which the father gave the infant, the child would have embraced and returned the affections of its grandmother. The worst that can be said of plaintiff is that she persisted in her efforts to *Page 547 
see her grandchild to the annoyance of the father and his wife, an annoyance which originated with them and which was not predicated upon any misbehavior of plaintiff.
One cannot but sympathize with plaintiff. However, there are other considerations which lead me reluctantly to the conclusion that the court cannot intervene on plaintiff's behalf.
The ultimate fact is that bad feelings do exist between the plaintiff and defendants, and that the conflict between them will inevitably filter through to the infant. Defendants produced medical testimony, which I find credible, that the conflict between the adults injuriously affects the child. Defendants further state that it is their decision that the child should be raised free of the circumstance that visitation by plaintiff will necessarily remind the child that the defendant wife is not its natural mother. Defendants further point out that the wife has acquired a parent's right of control by virtue of the judgment of adoption. R.S. 9:3-9.
The ultimate concern of the court is for the welfare of the infant. Where a contest for custody occurs between a parent and another not so related, the existence of a right in the parent is undoubtedly a factor which the court should take into account in determining the issue. No such right exists in a grandparent as against a parent. And accordingly it has been held that a grandparent does not have a right of visitation as against parents. Warnecke v. Lane, 75 A. 233, 234 (Ch. 1910) (not officially reported); People ex rel. Marks v. Grenier,293 N.Y.S. 364, 249 App. Div. 564 (1937); affirmed, 274 N.Y. 613,10 N.E.2d 577 (1937); Cf. In re Alsdorf, 142 N.J. Eq. 246,253 (Ch. 1948). It may further be noted that our decisions uphold the right of a parent to custody as against a grandparent.Ziezel v. Hutchinson, 91 N.J. Eq. 325 (E. A. 1920); Baumv. Kornberg, 139 N.J. Eq. 265 (E. A. 1947).
In those cases in which visitation has been granted to a grandparent, the result has been based entirely upon a consideration of the welfare of the child without judicial recognition of the existence of any right in the grandparent. In *Page 548 
a contest between a surviving parent and the grandparents on the deceased parent's side, one can readily understand that circumstances could justify the conclusion that the best interests of the child require visitation with the grandparents. But where the surviving parent remarries and the new spouse adopts the infant, thereby establishing a new family relation for the child, a very different situation is presented. The duty and right to determine how the child shall be raised rest with the parents. A court may not interfere merely because it possesses a different conception as to how to rear the child or what social relationships should be fostered or maintained.
The defendants desire that the child believe that the adopting mother is his natural one, and that the relation of the child to her be not subject to the possible disturbance which might flow from continued association with its maternal grandmother. On the record their determination may well be at variance with the decision which I would make if I were situated as are the defendants. But it is not the province of the court to superintend the thinking of parents unless the welfare of the child affirmatively requires intervention. People ex rel. Sissonv. Sisson, 271 N.Y. 285, 287, 2 N.E.2d 660, 661 (1936). A mere difference of opinion as to what is in the best interest of a child is not enough to support judicial action. If it were, the courts would be constantly called upon to resolve nice differences of views as to how best to raise a child. Where a father and an adopting mother conclude that a child's welfare is best served by severing natural ties with the parents of the deceased spouse, and where enforced visitation will undoubtedly disturb the atmosphere in which the child is reared, albeit that the disturbance results from personal rancor among the adult participants, I cannot say that the design for upbringing determined by the parents is so plainly contrary to the welfare of the child as to justify judicial interference.
I am not unmindful of Starr v. Gorman, 136 N.J. Eq. 105
(E. A. 1945). There, in the decree denying custody to the maternal grandparents as against the father who had *Page 549 
remarried, there was included a provision for visitation by the grandparents. However, it affirmatively appears that no objection was made to the provision for visitation, and hence the issue was not litigated. The award of custody there made was characterized as unconditional.
With respect to the contempt proceedings I must conclude that plaintiff has not sustained her charge. The circumstances are such as to justify the suspicion (which I do hold) that defendants sought deviously to nullify plaintiff's right of visitation under the temporary order. However, the proof is not sufficiently unequivocal to justify a finding against them.
Judgment is granted for defendants, but without costs.