[No. 6634–3–II. Division Two. May 13, 1983.]

*In the Matter of* JENNIFER J. THOMPSON.

THOMAS N. THOMPSON, ET AL, *Appellants,* v.
KATHY THOMPSON, *Respondent.*

*Roger Sherrard,* for appellants.

*Sanchez, Martin, Paulson & Mitchell,* by *John F. Mitchell* and *Anna M. Laurie,* for respondent Kathy Thompson.

*Jeffrey Tolman,* for Jennifer Thompson.

REED, J.—Thomas and Doris Thompson appeal from a Superior Court order awarding them limited and finite visitation rights with their granddaughter. The primary issue on appeal is whether the trial court abused its discretion in determining that this limited visitation was in the child's best interest. We find no abuse of discretion and accordingly affirm.

Kathy and Terry Thompson were married in October 1975. Their daughter, Jennifer, was born in 1977. Because of the work and school schedule of her parents, Jennifer had substantial and regular contact with Thomas and Doris Thompson, her paternal grandparents. In 1980, Kathy and Terry separated and commenced dissolution proceedings. Shortly thereafter, Terry was killed and a temporary order was entered which placed Jennifer in the care of her

mother and granted substantial visitation rights to the Thompsons. Hostilities later broke out between the parties and Kathy eventually refused to recognize the Thompsons' visitation rights. At that point the Thompsons commenced an action to establish permanent court ordered visitation rights (the Thompsons' contemporaneous action to obtain custody of Jennifer was abandoned prior to trial).

Evidence presented at trial indicated that the hostilities between Kathy and the Thompsons were not likely to be resolved in the foreseeable future. Dr. O'Leary, a psychologist who had met with all the parties, testified that these hostilities were having an adverse effect upon Jennifer and recommended a reduction of the Thompsons' existing visitation rights. Jennifer's guardian ad litem testified to the same effect, recommending that the Thompsons have only limited visitation rights.

The trial court ultimately granted the Thompsons limited visitation with Jennifer, to cease altogether on December 31, 1982, unless the parties could reach some kind of informal agreement. This ruling was based on the court's conclusion that enforced visitation after January 1, 1983, would not be in Jennifer's best interest because it would place her in a position of being continually exposed to the hostile feelings between her mother and grandparents.

The initial issue on appeal is whether the trial court followed the proper statutory guidelines in determining the Thompsons' visitation rights. RCW 26.09.240 provides that a court *may* order visitation between a child and a nonparent where such visitation would serve the best interest of the child.[1] The Thompsons maintain that the trial court based its visitation award on the erroneous conclusion that

---

[1]RCW 26.09.240 provides in pertinent part:

"A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical, mental, or emotional health. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances."

grandparents do not possess *any* visitation rights and did not give proper weight to the best interests of the child. They further argue that the court's ruling was improperly influenced by its reliance on outdated standards requiring a "threshold change" in the family unit as a prerequisite to nonparental visitation.[2]

The contention that the court failed properly to consider the interest of the child in determining the Thompsons' visitation rights is not well taken. The record reveals that the court's decision was based exclusively on Jennifer's best interest. The argument regarding the improper application of the "threshold change" requirement is also unpersuasive. It is true that the court made reference to this requirement in its findings of fact and conclusions of law. However, any error in this regard was harmless in light of the court's finding that the "threshold change" requirement had been satisfied by the death of Jennifer's father.

The Thompsons next contend that, in any event, there was insufficient evidence to support the court's finding that limited and finite visitation was in Jennifer's best interest. Therefore, they maintain that the limited visitation schedule set up by the court constituted an abuse of discretion.

We disagree. Dr. O'Leary's expert testimony established that constant exposure to the hostilities between her mother and grandparents was not in Jennifer's best interest. Indeed, the psychologist specifically stated that the benefits of reducing or terminating the Thompsons' visitation rights outweighed any potential deprivation Jennifer might suffer as a consequence of being cut off from them. We believe this evidence was sufficient to support the find-

---

[2]Prior to 1977 we construed RCW 26.09.240 as requiring a "threshold change" in the family unit as a prerequisite to granting visitation to a nonparent, such as death of a natural parent, dissolution or separation of the parents, and cases of child abuse and/or abandonment. *See Carlson v. Carlson*, 16 Wn. App. 595, 558 P.2d 836 (1976). This requirement was eliminated by the 1977 amendment to RCW 26.09.240, which added the clause "whether or not there has been any change of circumstances." See footnote 1. *See also In re Marriage of Klouse*, 30 Wn. App. 492, 635 P.2d 773 (1981).

ing that it was not in Jennifer's best interest that legally enforced visitation continue beyond January 1, 1983. *See In re Berman,* 44 Cal. App. 3d 687, 118 Cal. Rptr. 804 (1975). Accordingly, we find no abuse of discretion on the part of the trial court.

In a related argument the Thompsons urge this court to follow the lead of several foreign jurisdictions and place the parents of a deceased child in the shoes of that child for purposes of determining visitation rights with their grandchildren. *E.g., Ehrlich v. Ressner,* 55 A.D.2d 953, 391 N.Y.S.2d 152 (1977); *Lo Presti v. Lo Presti,* 40 N.Y.2d 522, 355 N.E.2d 372, 387 N.Y.S.2d 412 (1976); *Mimkon v. Ford,* 66 N.J. 426, 332 A.2d 199 (1975). Under Washington law, such derivative rights would entitle grandparents to reasonable visitation with their grandchildren absent a showing that such visitation would endanger the child's physical, mental or emotional health. RCW 26.09.240. The Thompsons maintain that the limited visitation schedule set up by the court in the present case would have been improper under this standard.

██ This contention is also without merit. The cases relied upon by the Thompsons are from jurisdictions which have enacted statutes granting derivative rights of visitation to grandparents if their child has died. *See, e.g.,* N.J. Stat. Ann. § 9:2–7.1 (West 1972); N.Y. Dom. Rel. Law § 72 (McKinney 1975). Washington does not have a statute of this type and any expansion of existing grandparental visitation rights is properly within the province of the Legislature. We wish to stress that our statute must be read as *permitting* the trial court, in its sound discretion and strictly from the child's viewpoint, to consider whether permitting third party visitation, including grandparents, will best serve that child's interest. It is not to be read as granting some exalted status or right to grandparents per se.[3] In essence, the statute does no more than reflect the

---

[3]Apparently the present (48th) Legislature shares this view. House Bill 86, entitled "An Act Relating to Grandparents' Visitation Rights", died in committee.

philosophy that:

> In those cases in which visitation has been granted to a grandparent, the result has been based entirely upon a consideration of the welfare of the child without judicial recognition of the existence of any right in the grand-parent.

*Mimkon v. Ford,* 66 N.J. at 440 (Clifford, J., dissenting) (quoting from *In re Goldfarb,* 6 N.J. Super. 543, 547, 70 A.2d 94, 96 (1949)).

 The final matter for our consideration is whether the Thompsons should be held responsible for the costs and attorney's fees incurred by Kathy in defending this appeal, including the fees owed to Jennifer's guardian ad litem. RCW 26.09.140 provides that the determination as to whether one party should pay the attorney's fees and costs incurred by the other party in maintaining an appeal is within the discretion of the appellate court. In making this determination an appellate court should consider the argu-able merit of the issues on appeal and the financial resources of the respective parties. *See* RCW 26.09.140; *In re Marriage of Dalthorp,* 23 Wn. App. 904, 598 P.2d 788 (1979). The record reveals that the Thompsons are in a better financial position than Kathy to bear the costs of this appeal. Moreover, we believe that the appeal was essentially factual in nature and did not present any issue upon which reasonable minds could differ. Consequently, Kathy having complied with RAP 18.1, we award her fees and expenses in the amount of $2,423[4] and her taxable

---

The act would have amended RCW 26.09.240(1) by adding "any grandparent so petitioning the court *shall be granted* visitation rights unless the court finds that such visitation would not be in the best interest of the child." (Italics ours.) It also would have added a new section reading: "Upon the death of the parent of a child, a grandparent of the child may at any time petition the court for visitation rights to the child. A grandparent so petitioning the court *shall be granted* visitation rights *unless* the court finds such visitation *would not be* in the best interest of the child." (Italics ours.)

[4]This award is intended to cover the costs and expenses incurred by Jennifer's guardian ad litem, as well as the amount owed to Kathy's personal attorney. Although the statute regarding payment of the expenses of a guardian ad litem

costs.

Affirmed.

PETRICH, C.J., and WORSWICK, J., concur.

(RCW 26.09.110) does not specifically address costs on appeal, we believe the criteria discussed above in connection with RCW 26.09.140 are controlling.