### Parkins v. Parkins
### Case No. 5-88-18
### Hancock County (3rd)
### Decided January 24, 1990
[Cite as 1 AOA 127]

*Messrs. Fry, Niemeyer & Kissh, Mr. Joseph H. Niemeyer, Attorney at Law, 116 West Lima Street, Findlay, Ohio 45840, For Appellant,*

*Messrs. Kentris & Wolph, Mr. George L. Kentris, Attorney at Law, 108 East Main Cross Street, Findlay, Ohio 45840, For Appellee.*

SHAW, J.

This is an appeal from a judgement entry and decree of divorce filled in the Common Pleas Court of Hancock County on June 23, 1988. Defendant-appellant, Dennis Parkins (Dennis) raises five assignments of error claiming the trial courts abused its discretion in determining issues pertaining to child support, medical bills, alimony, property division and visitation.

"1. The trial court abused its discretion and erred in establishing the amount of child support to be paid by appellant, where it failed to find that appellee was voluntarily underemployed."

In his first assignment of error, Dennis claims the trial court erred in not imputing potential income to plaintiff-appellee, Sandra Parkins (Sandra) as a "voluntarily underemployed parent" in violation of the trial court's own child support guidelines as set forth in Section III (A) (4) of Hancock County Common Pleas Court Local Rule 2.30.

The Local Rule provides in pertinent part:

"*If* a parent is voluntarily unemployed or underemployed, child support *may* be calculate based on a determination of potential income. *It is within the trial court's discretion whether to impute income on a case by case basis. * * *"*(Emphasis added.)

The language of this rule clearly contemplates a finding by the trial court that the parent in question is voluntarily underemployed as a predicate to the subsequent exercise of the court's *discretion* in determining whether to impute income where such a finding is made. In the case before us, the trial court made no such finding.

There was testimony that Sandra and Dennis had made a joint decision early in the marriage that Sandra would not seek employment outside the home in order to take care of the two children, which she did for a

number of years. Additional testimony indicated that Sandra had once been licensed and employed as beautician and had taken some steps to retrain herself for that profession again after fifteen years away from the business.

From the time of the parties' separation (approximately one and one-half years prior to the divorce) Sandra also testified that she had investigated several avenues of employment and at the time of the divorce, she was employed part-time at the Hancock County Humane Society.In short, there is competent, credible evidence in the record upon which the trial court could have properly based its refusal to find Sandra was voluntarily underemployed and we will not second guess that decision. See *C.E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279. Nor do we find any abuse of the trial court's discretion in its resulting decision that imputing potential income to Sandra as permitted in Local Rule 2.30 was not appropriate in this case.

See *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217.

The first assignment of error is overruled.

"2.The trial court abused its discretion and erred in ordering appellant to pay all medical dental, optometric, orthodontic, hospital, drug and illness expenses of the minor children contrary to Local Rule 2.29 and the stipulation of the parties."

The record shows that Dennis and Sandra entered into the following stipulation at trial regarding payment of medical expenses for the children:

"That the Defendant [Dennis] will pay the medical, dental, optometric, hospital and prescription drug expenses of the children and keep them covered under health and accident insurance *subsequent* to the Local Rule pertaining to the same." (Emphasis added.) Local Rule 2.29 of the Hancock County Common Pleas Court provides in pertinent part:

"*Unless otherwise specified in a medical provision of a judgement entry* the responsibility for any and all medical, dental, and oculist expense shall not exceed two hundred ($200.00) dollars per calendar year per child. * * *" (Emphasis added.)

The final judgement entry and decree of divorce provides in regard to the medical expenses as follows:

"4. Defendant [Dennis] shall maintain medical and hospitalization insurance coverage for the protection of each child and shall be responsible for the payment of all medical, dental, optometric, orthodontic, hospital, drug and illness expenses of said minor children not covered by insurance."

Presumably on the basis of the phrase "* * * subsequent to the Local Rule * * *" contained in the stipulation of the parties, Dennis now argues that the agreed to pay the medical expenses only to the extent of the $200 per child per year specified in the Local Rule. We are not clear as to the intended meaning of the word "subsequent" in the stipulation, although it is evident that Dennis would have us interpret this as "subject" or "pursuant." Unfortunately the stipulation does not say that and we must therefore be cautious in the weight to be given the stipulation. In any event, the emphasized portion of the local rule seems to openly allow for the trial court to "* * * otherwise specify" * * *" a different provisions in its final judgement entry which the trial court obviously did here. Thus the ultimate consideration once again is simply whether the trial court abused its discretion either in disregarding the stipulation of the parties or in disregarding the $200 limit suggested in Local Rule 2.29. See *Blakemore* v. *Blakemore, supra*, and see (regarding appellate review of trial court's deviation from its own local rule) 23 Ohio Jurisprudence 3d (1980), 119, 121, Courts and Judges, Sections 488, 489.

There is no evidence in the record from which we can draw a reliable conclusion as to the monetary difference to Dennis between the $200 limit of Local Rule 2.29 and the actual amount he might have to pay under the court's order. However, the evidence showed among other things that at the time of the divorce, Dennis was gainfully employed as the manager of a convenience store at a salary in the $40,000 range. On the other hand, Sandra maintained only tenuous part-time employment with a total yearly income in the range of $9,000 with custody of and responsibility for the two minor children. Thus, even considering Sandra's award of the residence, child support and alimony we cannot say that the trial court's order concerning the medical expenses, whether in derogation of the court's own guidelines or

the stipulation of the parties, was unreasonable, arbitrary or unconscionable under the circumstances. *Blakemore* v. *Blakemore, supra.* We find no abuse of discretion by the trial court and the second assignment of error is overruled.

"3. The trial court abused its discretion and erred in awarding appellee alimony in an amount and for a period of time contrary to section 3105.18 (B) O.R.C., and local alimony guidelines."

Under his third assignment of error, Dennis first argues that the trial court failed to consider all eleven statutory factors under R.C. 3105.18 (B) in determining its award of alimony.

The relevant portion of R.C. 3105.18 (B) states:

"(B) In determining whether alimony is necessary, and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including, but not limited to, the following: * * *"

See also, *Kaechele* v. *Kaechele* (1988), 35 Ohio St. 3d 93, holding that in making a sustenance alimony award, the trial court must consider all the factors listed in R.C. 3105.18 (B) and not base its determination upon any one of those factors taken in isolation. *Id.* syllabus.

It is true that the trial court here chose to specifically enumerate only seven of the eleven factors listed under R.C. 3105.18 (B) in its Minutes and Order filed in conjunction with the final judgement entry of divorce. However, we do not agree with Dennis that the trial court therefore failed to consider all the statutory factors.

Emphasis of certain factors relevant to a particular alimony determination by a trial court is not necessarily inconsistent with the duty of the trial court to consider all of the factors enumerated in R.C. 3105.18 (B). Despite holding that all the statutory factors must ultimately be considered, the Ohio Supreme Court has readily acknowledged that:

"* * * Some of the factors enumerated in R.C. 3105.18 (B) are more pertinent than others in the process of reaching an equitable property division, while some are more relevant in ascertaining the need for and amount of sustenance alimony. [citations omitted.]" *Kaechele, supra,* at 96.

In the case before us, the Minutes of the trial court state with regard to alimony:

"The Court has next proceeded to consider the matter of subsistence alimony which it finds the plaintiff is entitled to *under the facts and circumstances before the Court taking into consideration the provisions of Ohio Revised Code Section 3105.18 (B) and specifically the following:* * * *" (Emphasis added.)

We believe the language above clearly indicates that the trial court considered "* * * all relevant factors, including, but not limited to * * *" all eleven factors as required by R.C. 3105.18 (B) and *Kaechele* v. *Kaechele, supra.*

Dennis next makes the argument that the trial court again deviated from its own local guidelines with regard to the duration of the alimony award. In essence, the trial court awarded sustenance alimony to Sandra in an amount equal to ten percent of Dennis' gross income, less FICA payments and child support payments, for a period of ten years certain, and for an additional five years on the condition that Sandra does not remarry or cohabit with a person of the opposite sex for more that six months continuously. The relevant section of the Proposed Alimony Guidelines of the Hancock County Common Pleas Court provide, *inter alia,* that, "* * * alimony will generally be awarded for two (2) months for each year of sacrifice for the marital good."

Dennis argues that in this case, Sandra's "* * * sacrifice for the marital good" would extend only to the fourteen years of marriage during which she gave up her outside employment to care for the home and children. At the rate of two months for each year, this would compute to just twenty-eight months of alimony under the Proposed Guidelines above. In no event, Dennis argues, should Sandra receive more than thirty-four months of alimony based upon the seventeen year duration of the marriage.

We have already stated under the second assignment of error that we will not reverse a trial court's decision to deviate from its own local rule or guideline absent an abuse of discretion. See 23 Ohio Jurisprudence 3d (1980), 119, 121, Courts and Judges, Sections 488, 489. We have also previously discussed the fact that the trial court considered all relevant factors including those specified in R.C. 3105.18 (B) in arriving at its award of alimony in this case.

In *Kaechele* v. *Kaechele, supra,* the Ohio Supreme Court set forth a concise statement of the principles governing appellate review of alimony awards in this state:

"In Ohio, alimony is comprised of two components: a division of marital assets and liabilities, and periodic payments for sustenance and support. *Cherry* v. *Cherry* (1981), 66 Ohio St. 2d 348, 352.

* * * After the division of property is made, the trial court may consider (1) whether an additional amount is needed for sustenance and (2) the duration of such necessity. *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399, 414. * * *

"In *Cherry, supra,* we rejected a flat equal-property-division rule and held that equal division should be the *starting point* of the trial court's analysis when it considers the factors listed in R.C. 3105.18 and all other relevant factors. An unequal property division does not, standing alone, amount to an abuse of discretion. *Equitable need not mean equal.*

"*This reasoning applies to sustenance alimony awards.* * * * Sustenance alimony is based on need, and the trial court must have latitude to examine all the evidence before it awards an amount that is reasonable and equitable to both parties." *Kaechele, supra,* at 95. (Emphasis added.)

We find there is ample credible, competent evidence in the record going to each of the factors enumerated in R.C. 3105.18 (B) in support of the alimony award made by the trial court. See *C.E. Morris Co., supra.*

This evidence includes, among other things, the disparate income and employability of the parties, (due in part to Sandra's sacrifice of outside employment to be a homemaker,) and the responsibility for the children placed upon Sandra. Considering the totality of circumstances in this case and the guidelines set forth above, we do not find the trial court's award of alimony to be unreasonable, arbitrary or unconscionable, either as to amount or duration. See *Blakemore, supra,* at 219, 220.

The third assignment of error is overruled.

"4. The trial court abused its discretion and erred in awarding appellee a grossly disproportionate and inequitable amount of the marital assets."

We do not agree with Dennis that the trial court's award of marital assets was grossly disproportionate. Indeed, when the parties' incomes are considered in conjunction with tangible assets, the total division is roughly equal. Dennis' primary quarrel appears to be in the award of the marital residence to Sandra. However, the award also included the mortgage obligation and notwithstanding a substantial equity in the property, it is Sandra who must maintain a home for the two children.

Even conceding a disparate division of purely tangible assets, the guidelines for appellate review of these decisions in this state are clearly set forth above under the previous assignment of error. A common pleas court has broad discretion to determine what property division is equitable in a divorce proceeding. *Cherry* v. *Cherry, supra.* The mere fact that a property division is unequal, does not, standing alone, amount to an abuse of discretion. *Id.* Flat rules have no place in determining a property division. *Briganti* v. *Briganti* (1984), 9 Ohio St. 3d 220, citing *Cherry* v. *Cherry, supra, Berish* v. *Berish* (1982), 69 Ohio St. 2d 318 *Koegel* v. *Koegel* (1982), 69 Ohio St. 2d 355, and Blakemore v. Blakemore, supra. Rather, a trial court must have discretion to do what is equitable upon the facts and circumstances of each case. *Id.* Accordingly, a reviewing court is limited to determining whether, considering the totality of the circumstances, the trial court abused its discretion. *Id.*

Considering the totality of the circumstances in this record we find no abuse of discretion in the trial court's division of marital assets. The fourth assignment of error is overruled.

"5. The trial court abused its discretion and it erred in restricting appellant's visitation rights with the minor children of the parties on the basis of his marital status."

The particular provision of the trial court's order to which Dennis objects in his fifth assignment of error, states simply that "* * * until Defendant's [Dennis'] marital status is resolved, there shall be no overnight visitation."

The record establishes that approximately a year and a half prior to the divorce, Dennis developed a relationship with another woman. As a result of this relationship, he moved out of

the marital residence approximately one year prior to the divorce. At the time of the divorce Dennis was unmarried and residing at the home of the other woman and her two children from a previous marriage.

The evidence further indicates that while the children in this case generally wanted some visitation with their father, they were very uncomfortable visiting him at the girlfriend's residence where among other things they apparently shared sleeping quarters with her children. The evidence also indicated generally, that the relationship with the other woman during the marriage, the resultant one year separation of their father from the marital home and the ultimate divorce had taken a severe toll on both children, leading to a number of difficulties including poor grades and discipline problems at school.

In this context, and particularly in view of Sandra's testimony as to the children's reluctance to stay with Dennis at his girlfriends, the trial court ordered the restriction on overnight visitation set forth above. It is important to note that visitation was merely restricted and not denied altogether. Accordingly, case decisions cited by Dennis setting forth requisite showings of parental unfitness or specific harm to the child where the non-custodial relationship is severed by the court are clearly distinguishable. See for example, *Pettry* v. *Pettry* (1984), 20 Ohio App. 3d 350.

Under R.C. 3109.05 (B), "[t]he court may make any just and reasonable order or decree permitting any parent who is deprived of the care, custody, and control of the children to visit them at the time and under the conditions that the court directs."

"* * * The statute referred to above reflects society's jealous regard for the welfare of the minor child; the statute clothes the court with full discretionary powers, and only an abuse of such power will sustain a reversal of the trial court's judgment. The court's discretion in determining visitation rights is broader than in deciding custody awards. * * *" 48 Ohio Jurisprudence 3d (1983), 109, Family Law, Section 1023. See also, *State, ex rel. Scordato,* v. *George* (1981), 65 Ohio St. 2d 128.

Despite the broad discretion of the trial court in determining visitation rights, the Ohio Supreme Court has recently held that the factors set forth in R.C. 3109.04(C) with respect to determining the child's best interest in custody cases apply equally to visitation cases and that the trial court must therefore weigh these and other relevant factors in determining the child's best interest in visitation cases.

*In re Whitaker* (1988), 36 Ohio St. 3d 213, syllabus. The factors set forth in R.C. 3109.04(C) are:

"(1) The wishes of the child's parents regarding his custody;
"(2) The wishes of the child regarding his custody if he is eleven years of age or older;
"(3) The child's interaction and inter-relationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
"(4) The child's adjustment to his home, school, and community;
"(5) the mental and physical health of all persons involved in the situation."

Also addressed in the *Whitaker* decisions was the method to be used by the trial court in ascertaining a child's wishes regarding visitation under R.C. 3109.04(C) (2). *In re Whitaker, supra,* at 218. As noted earlier, the children of this marriage were ages eight and fifteen at the time of the divorce. Neither child testified at the trial. Nor is there any indication in the record that the trial judge interviewed either child.

Clearly, the trial court need not consider the wishes of a child under the age of eleven in determining visitation or custody. *In re Whitaker, supra,* at 217. Thus, the decision of the trial court in the case before us regarding the parties' eight year old daughter (Kristin) was purely discretionary. *Id.* We find that the record demonstrates that the trial court in this case did consider all of the remaining factors set forth in R.C. 3109. 04(C) in determining visitation and therefore find no abuse of discretion in the visitation order pertaining to Kristin. On the other hand, R.C. 3109.04(C) (2) clearly requires the trial court to consider the wishes of a child who has reached the age of eleven.

Under *In re Whitaker, supra,* this requires some direct input from the child either in the form of testimony or an in camera interview. *Id.* at 218.

See also, in accord, the previous decision of this court in Castle v. Castle (Feb. 9, 1989), Hardin App. No. 6-86-15, unreported.

We do not believe the testimony of a third party as to the wishes of such a child is sufficient to comply with R.C. 3109.04(C)(2). *Id.* at 6.

However, as long as a record is made, decisions as to the manner of receiving the child's input, ranging from courtroom testimony to an informal interview in chambers outside the presence of parties and counsel, remain within the sound discretion of the trial court. *Id.* Nevertheless, direct input from the child must be received and was not obtained in the case before us from fifteen year old Jason.

Certainly the wishes of the child are only one factor of many which the court may properly consider in arriving at a visitation order. However, in view of the mandatory holding of *In re Whitaker, supra,* we must find that the trial court erred in making its visitation order without proper consideration of Jason's wishes. To this extent only, the fifth assignment of error is sustained.

Accordingly, we remand this case to the trial court for the limited purpose of considering Jason's wishes in regard to the restriction on overnight visitation. The judgment of the trial court is reversed and remanded for hearing on the limited issue of overnight visitation as set forth above. In all other respects the assignment of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed in part and reversed in part.*

EVANS, P.J., and MILLER, J., concur.