JUANITA DALY, Appellant, *v.* WILLIAM R. MORSE, Guardian of the Person of MARCUS DALY LAMB, a Minor Child; TIMOTHY MORSE and SHERRY MORSE, Custodians of the Person of MARCUS DALY LAMB, a Minor Child, Respondents.

No. 14439

June 22, 1983                                            665 P.2d 797

*Dickerson, Miles, Pico & Mitchell,* Las Vegas, for Appellant.

*Wiener, Waldman & Gordon,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

This is an appeal from an order denying appellant's petition for visitation rights. Because appellant had a right to petition for visitation rights and was entitled to a hearing on that petition, we reverse and remand this case to the district court.

In December, 1958, appellant married Marcus Daly III. Prior to this marriage, Daly had been married to Kathryn Little Daly. While married to Kathryn Little Daly, Marcus Daly III fathered a child out of wedlock, Candace Marie, whom he and Kathryn Little Daly later adopted. When Marcus and Kathryn Daly divorced, Candace was left in Kathryn's custody. Marcus Daly III died in 1970.

Candace married Earl Lamb, and they had a son, Marcus Daly Lamb, in 1978. Earl Lamb died in 1979, and Candace died in 1981. Candace's will nominated William Morse as Marcus Lamb's guardian, and he was later appointed as such by court order. William Morse arranged for the placement of Marcus Lamb with Morse's son and daughter-in-law, Timothy and Sherry Morse, as compensated foster parents.

In February, 1982, appellant initiated a series of six or seven

visits with Marcus Lamb. In June, 1982, appellant was told by Sherry Morse that the visits were to stop until appellant's intentions regarding Marcus Lamb were made clear to William Morse. Since that time, appellant has not been permitted to visit Marcus Lamb.

Appellant filed a petition for right of visitation. After a hearing on the matter, the district court denied appellant's petition on the grounds that petitioner was not eligible under NRS 123.123 to seek court-ordered visitation. The court also stated that appellant had not shown a basis for claiming *in loco parentis* status. This appeal followed.

Our review of the facts in this case and the applicable law convinces us that the district court erred in restricting its consideration of appellant's eligibility to petition for visitation rights to the criteria stated above. The trial court based its decision regarding appellant's right to petition for visitation upon NRS 123.123.[1] This statute, which is contained in Chapter 123 of Nevada Revised Statutes dealing with the rights of husbands and wives, need not have been referred to by the lower court. Here, the court was dealing with a guardianship, a situation completely different from that anticipated in the above-referenced statute. Our statutes and cases expressly provide that third persons such as appellant may petition the district court for termination or modification of a guardianship and that the court, of which the guardian is but an administrative arm, may consider such petitions in light of its duty to promote the best interests of the child.

[1]NRS 123.123 provides:

*123.123 District court may grant right to visit minor child of deceased or divorced parent to certain relatives of that parent.*

1. If a parent of an unmarried minor child is deceased or divorced from the parent who has custody of the child, the district court in the county in which the child resides may grant to the grandparents, parents and other children of the parent who is deceased or divorced from the parent who has custody of the child a reasonable right to visit the child during his minority, if the court finds that the visits would be in the best interests of the child. In determining whether to grant this right to a petitioner who is not one of the parents of the person who is deceased or does not have custody of the child, the court shall consider the amount of personal contact between the petitioner and the child which occurred before the petition for the right to visit was filed.

2. Rights to visit a child may be granted:

(a) In a divorce decree; or

(b) Upon a petition filed by an eligible person after a divorce or the death of the parent to whom the person was related.

3. Termination of the parental rights of a parent also terminates any rights granted pursuant to this section to persons related to the parent, and bars any granting of such rights to those persons.

NRS 159.1905 states, "[a] ward *or other person* may petition the court for the termination or modification of a guardianship." In Mendive v. Third Judicial District Court, 70 Nev. 51, 253 P.2d 884 (1953), we observed:

> [T]he present guardian is but an arm of the district court of Washoe County, [citation omitted]. She could not arbitrarily and contrary to the best interests of the minor refuse her consent to the minor's adoption by the maternal grandfather. Her right to custody, being solely for the child's benefit, may be regulated, controlled, or denied by the court if necessary in the promotion of the child's best interests.

*Id.* at 62-63.

In the instant case, appellant's petition should have been considered by the district court within its power to regulate, control, deny or modify the guardianship over Marcus Daly Lamb. Such consideration should reflect the *parens patriae* role of the court in promoting the best interests of the child.[2] Mendive v. District Court, *supra.* That it did not do so was error. We therefore reverse the decision of the district court and remand the case for a hearing on appellant's petition.

---

[2]We, of course, do not suggest by this opinion whether appellant's petition should be favorably considered by the district court. Such a determination must await a full hearing on the merits.