IN RE WHITAKER ET AL.

[Cite as In re Whitaker (1988), 36 Ohio St. 3d 213.]

(No. 87-973—Decided May 4, 1988.)

*Porter, Wright, Morris & Arthur, Denise M. Mirman* and *Ronald E. McKenzie,* for appellants.

*Evans, St. Clair & Kelsey* and *Robert C. Hetterscheidt,* for appellee.

WRIGHT, J. The issue of grandparent visitation rights has become a topic of intense interest in this state and elsewhere in recent years. This court has not directly addressed this important issue, but will do so today.

## I

At common law, grandparents had no legal rights of access to their grandchildren. In other words, parents had complete authority to grant or deny grandparents the privilege of visiting their grandchildren. See Note, The Constitutional Constraints on Grandparents' Visitation Statutes (1986), 86 Colum. L. Rev. 118.

This situation has changed dramatically in recent years. Today, forty-eight states have enacted statutes recognizing grandparent visitation rights under certain circumstances. The emergence of these statutes, which were virtually unheard of fifteen years ago, has been attributed to the rising divorce rate and resulting family disruption, coupled with changing concepts of child custody and visitation in divorce and dissolution laws. *Id.* at 119-122.

Most of these statutes explicitly recognize grandparent visitation rights. Others, such as the ones found in Ohio, grant such rights to parties other than noncustodial parents who have an interest in the welfare of the child.

Ohio has two statutes that confer visitation rights upon nonparents: R.C. 3109.11 and 3109.05(B). The former grants visitation rights to relatives of a deceased parent. The latter, which is the statutory provision at issue in this case, provides that in a divorce, dissolution of marriage, alimony or child-support proceedings:

"The court may make any just and reasonable order or decree permitting any parent who is deprived of the care, custody, and control of the children to visit them at the time and under the conditions that the court directs. In the discretion of the court, reasonable companionship or *visitation rights may be granted to any other person having an interest in the welfare of the child.* The juvenile court shall have exclusive jurisdiction to enter the orders in any case certified to it from another court." (Emphasis added.)

Thus, if grandparents are to have visitation rights in Ohio, they do not vest until the occurrence of a disruptive precipitating event, such as parental death or divorce.[1] Otherwise, the common-law view of deferring to parental autonomy in raising the child is observed despite any moral or social obligations that may encourage contact between grandparents and grandchildren. See *In re Schmidt* (1986), 25 Ohio St. 3d 331, 25 OBR 386, 496 N.E. 2d 952, which held that grandparents have no inherent visitation rights with grandchildren or a constitutional right of association with them. Indeed, grandparents do not have any legal right to have contact with their grandchildren until a court grants them such a right. *Id.* at 336, 25 OBR at 391, 496 N.E. 2d at 957. Nevertheless, courts in at least twenty-one states, including two Ohio appellate courts, have held that grandparents may be granted rights to visit with a child if such visitation would be in the child's best interest.[2]

---

[1] We do not express an opinion as to whether state intervention in the parent-child relationship is suitable grounds under which grandparents may seek visitation rights. But, see, *In re Schmidt* (1986), 25 Ohio St. 3d 331, 337-338, 25 OBR 386, 391-392, 496 N.E. 2d 952, 958 (Celebrezze, C.J., concurring).

[2] See, *e.g., Ross* v. *Powell* (Ala. Civ. App.), 359 So. 2d 803; *Kentera* v. *Kentera* (1944), 66 Cal. App. 2d 373, 152 P. 2d 238; *Benner* v. *Benner* (1952), 113 Cal. App. 2d 531, 248 P. 2d 425; *Roquemore* v. *Roquemore* (1969), 275 Cal. App. 2d 912, 80 Cal. Rptr. 432; *Bookstein* v. *Bookstein* (1970), 7 Cal. App. 3d 219, 86 Cal. Rptr. 495; *Adoption of Berman* (1975), 44 Cal. App. 3d 687, 118 Cal. Rptr. 804; *Reeves* v. *Bailey* (1975), 53 Cal. App. 3d 1019, 126 Cal. Rptr. 51; *Mirto* v. *Bodine* (1972), 29 Conn. Supp. 510, 294 A. 2d 336; *Shuler* v. *Shuler* (Fla. App. 1979), 371 So. 2d 588; *Putnal* v. *Putnal* (Fla. App. 1981), 392 So. 2d 613; *Scott* v. *Scott* (1922), 154 Ga. 659, 115 S.E. 2; *Towne* v. *Cole* (1985), 133 Ill. App. 3d 380, 88 Ill. Dec. 404, 478 N.E. 2d 895; *Chodzko* v. *Chodzko* (1976), 66 Ill. 2d 28, 4 Ill. Dec. 313, 360 N.E. 2d 60; *McKinney* v. *Cox* (1958), 18 Ill. App. 2d (abstract) 609, 153 N.E. 2d 98; *Boyles* v. *Boyles* (1973), 14 Ill. App. 3d 602, 302 N.E. 2d 199; *Temple* v. *Temple* (1977), 52 Ill. App. 3d 851, 10 Ill. Dec. 706, 368 N.E. 2d 192; *Sanders* v. *Sanders* (Ind. App. 1983), 452 N.E. 2d 1057; *Browning* v. *Tarwater* (1974), 215 Kan. 501, 524 P. 2d 1135; *Strong* v. *Trosclair* (La. App. 1982), 423 So. 2d 13; *Clary* v. *Clary* (La. App. 1983), 426 So. 2d 238; *Smith* v. *Trosclair* (La. 1975), 321 So. 2d 514; *In re Marriage of Pickering* (Mo. App. 1979), 588 S.W. 2d 232; *Warman* v. *Warman* (Mo. App. 1973), 496 S.W. 2d 286; *Daly* v. *Morse* (1983), 99 Nev. 532, 665 P. 2d 797; *Roberts* v. *Ward* (1985), 126 N.H. 388, 493 A. 2d 478; *In re Lippincott* (1924), 96 N.J. Eq. 260, 124 A. 532, affirmed (1925), 97 N.J. Eq. 517, 128 A. 254; *Mimkon* v. *Ford* (1975), 66 N.J. 426, 332 A. 2d 199; *In re Application of Goldfarb*

Statutes authorizing grandparent visitation are based on the assumption that contact between grandparents and grandchildren is in the children's best interest.[3] The benefits of a healthy grandparent-grandchild relationship were recognized by the New Jersey Supreme Court in *Mimkon* v. *Ford* (1975), 66 N.J. 426, 332 A. 2d 199, where the court stated:

"A very special relationship often arises and continues between grandparents and grandchildren. The tensions and conflicts which commonly mar relations between parents and children are often absent between those very same parents and their grandchildren. Visits with a grandparent are often a precious part of a child's experience and there are benefits which devolve upon the grandchild from the relationship with his grandparents which he cannot derive from any other relationship. Neither the Legislature nor this Court is blind to human truths which grandparents and grandchildren have always known." *Id.* at 437, 332 A. 2d at 204-205.

We, too, recognize the importance of a grandchild-grandparent relationship and understand that maintenance

---

(1949), 6 N.J. Super. 543, 70 A. 2d 94; *In re Adoption of Child by M.* (1976), 140 N.J. Super. 91, 355 A. 2d 211; *Bennett* v. *Bennett* (1977), 150 N.J. Super. 509, 376 A. 2d 191; *Johansen* v. *Lanphear* (1983), 95 App. Div. 2d 973, 464 N.Y. Supp. 2d 301; *Layton* v. *Foster* (1983), 95 App. Div. 2d 77, 466 N.Y. Supp. 2d 723, affirmed (1984), 61 N.Y. 2d 747, 472 N.Y. Supp. 2d 916, 460 N.E. 2d 1351; *Lyng* v. *Lyng* (1985), 112 App. Div. 2d 29, 490 N.Y. Supp. 2d 940, later proceeding (1985), 112 App. Div. 2d 29, 490 N.Y. Supp. 2d 1013; *Winifred G.* v. *Edwin Gould Services for Children* (1985), 115 App. Div. 2d 390, 496 N.Y. Supp. 2d 21; *Quintela* v. *Ranieri* (1986), 117 App. Div. 2d 1019, 499 N.Y. Supp. 2d 562; *Graziano* v. *Davis* (1976), 50 Ohio App. 2d 83, 4 O.O. 3d 55, 361 N.E. 2d 525; *Welsh* v. *Laffey* (1984), 16 Ohio App. 3d 110, 16 OBR 117, 474 N.E. 2d 681; *Looper* v. *McManus* (Okla. App. 1978), 581 P. 2d 487; *Hughes* v. *Hughes* (1983), 316 Pa. Super. 505, 463 A. 2d 478; *Commonwealth, ex rel. Shee,* v. *Holewski* (1983), 316 Pa. Super. 509, 463 A. 2d 480; *Herron* v. *Seizak* (1983), 321 Pa. Super. 466, 468 A. 2d 803; *Agati* v. *Agati* (1985), 342 Pa. Super. 132, 492 A. 2d 427; *Bucci* v. *Bucci* (1986), 351 Pa. Super. 457, 506 A. 2d 438; *Commonwealth, ex rel. Flannery,* v. *Sharp* (1943), 151 Pa. Super. 612, 30 A. 2d 810; *Commonwealth, ex rel. McDonald,* v. *Smith* (1952), 170 Pa. Super. 254, 85 A. 2d 686; *Commonwealth, ex rel. Goodman,* v. *Dratch* (1960), 192 Pa. Super. 1, 159 A. 2d 70; *Commonwealth, ex rel.*

*Goodwin,* v. *Goodwin* (1963), 82 Montg. Cty. LR 328; *Kirby* v. *Morris* (Tex. Civ. App. 1917), 198 S.W. 995; *Deweese* v. *Crawford* (Tex. Civ. App. 1975), 520 S.W. 2d 522; *In re Custody of Thompson* (1983), 34 Wash. App. 643, 663 P. 2d 164; *Carlson* v. *Carlson* (1976), 16 Wash. App. 595, 558 P. 2d 836; *Weichman* v. *Weichman* (1971), 50 Wis. 2d 731, 184 N.W. 2d 882; *Nation* v. *Nation* (Wyo. 1986), 715 P. 2d 198.

[3] "Sociological literature has documented and analyzed the benefits children receive from a healthy relationship with their grandparents. Contact with grandparents produces children who are rooted in and proud of their family and culture, emotionally secure, and highly socialized. Additionally, interaction between grandparents and grandchildren mitigates ageism in children because older people love them, mitigates sexism because grandmothers and grandfathers do essentially the same thing, and eliminates fear of old age because grandparents serve as ancestor role models. Finally grandparents can give grandchildren 'an emotional sanctuary from the everday world.' These findings are consistent with those of other experts on child development who generally agree that it is important for children to maintain ongoing meaningful relationships." Zablotsky, To Grandmother's House We Go: Grandparent Visitation after Stepparent Adoption (1985), 32 Wayne L. Rev. 1, 46.

of this relationship may be in the best interest of the child. Therefore, we hold that grandparents may be granted visitation rights under R.C. 3109.11 and 3109.05(B) if the trial court finds that such visitation is in the child's best interest.[4]

## II

The next issue we address is what evidence must a trial court consider in determining whether grandparent visitation — or any other visitation — is in the child's best interest?

No statutory scheme currently exists by which a trial court is to determine the child's best interest in visitation cases. In custody cases, however, R.C. 3109.04(C) sets forth five factors that a trial court must consider in determining the child's best interest. These are:

"(1) The wishes of the child's parents regarding his custody;

"(2) The wishes of the child regarding his custody if he is eleven years of age or older;

"(3) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;

"(4) The child's adjustment to his home, school, and community;

"(5) The mental and physical health of all persons involved in the situation."

Other than the fact that a custody award is more permanent in nature, many of the goals and concerns involved in custody cases are substantially similar to those found in visitation cases. Therefore, we hold that the factors set forth in R.C. 3109.04(C) with respect to determining the child's best interest in custody cases apply equally to visitation cases. The trial court must weigh these and other relevant factors in determining the child's best interest in visitation cases.

The statutory language of R.C. 3109.04(C)(2) mandates that the trial court consider the child's wishes regarding his or her custody once the child reaches the age of eleven. Prior to the child's attaining that age, the trial court need not consider the child's wishes. But it is certainly within the trial court's discretion to allow a child under the age of eleven to testify concerning his or her wishes.[5] Indeed, it must be remembered that the single most important individual in a case addressing visitation rights is the child.

In the instant case, Shay was ten years old at the time the evidentiary hearing was conducted. Under the standards established above, it would be within the trial court's discretion to consider Shay's wishes regarding visitation — although such wishes would not necessarily be determinative of the issue.

---

[4] The facts of this case do not present us with the opportunity to address another important issue that sometimes arises in these cases, *i.e.,* whether adoption of a child by a stepparent divests grandparents of visitation rights. Two Ohio appellate courts, however, have addressed this question and held that adoption by a stepparent does not terminate the power of a court to determine visitation rights in grandparents. These appellate courts have held that such an adoption is merely a factor the trial court must consider in determining the best interest of the child. See *Welsh* v. *Laffey* (1984), 16 Ohio App. 3d 110, 16 OBR 117, 474 N.E. 2d 681; *Graziano* v. *Davis* (1976), 50 Ohio App. 2d 83, 4 O.O. 3d 55, 361 N.E. 2d 525.

[5] A child's competency is generally determined by an analysis of the child's intelligence, capacity to observe, remember, and relate the facts testified to, ability to know the difference between the truth and a lie, and understanding the importance to tell the truth under oath. See Haralambie, Handling Child Custody Cases (1984), at 37, Section 3.18.

## III

The next question we must address — and the predominant one in this case — is what method should the trial court use in ascertaining a child's wishes regarding visitation?

Prior to the evidentiary hearing in this case, appellee made a motion for the trial court to conduct an *in camera* interview with Shay. At the conclusion of the hearing, appellee's counsel indicated that the request for such an interview had been overruled by the trial court on the basis that unless both parties stipulated to the interview, the court would not examine the child outside the hearing of the parties.

While it may be entirely appropriate for a child to testify in open court under these circumstances, it may be more effective for the child to testify in chambers or for the trial court to informally interview the child *in camera*. "Testifying puts the child in an awkward position at a time when he or she already feels the pull of conflicting loyalties. Where the child wants to testify, or where the attorney has decided that it is necessary, the issue becomes whether the child testifies from the stand or whether the judge may conduct an interview in camera." Haralambie, Handling Child Custody Cases (1984), at 36-37, Section 3.18.

Because Ohio law in this area can only provide generalized aid, we seek guidance from the Uniform Marriage and Divorce Act (1974), parts of which have been adopted by the Ohio General Assembly in Title 31 of the Revised Code. Section 404(a) of the Uniform Act provides:

"The court may interview the child in chambers to ascertain the child's wishes as to his custodian and as to visitation. The court may permit counsel to be present at the interview. The court shall cause a record of the interview to be made and to be part of the record in the case."

The purpose of an *in camera* interview is to protect the child from having to say negative things about either party or express a custodial or visitation preference in the presence of the parties.[6] See Haralambie, *supra*, at 37, Section 3.18.

We do not believe that it is a denial of due process for the court to interview the child *in camera*, even over the objection of a party. This is especially true where the only inquiry is into the child's custodial or visitation preference, where the court informs the parties of the contents of the interview, or where the attorneys are present during the interview. Haralambie, *supra*, at 37, Section 3.18; *Lincoln* v. *Lincoln* (1969), 24 N.Y. 2d 270, 299 N.Y. Supp. 2d 842; *Lesauskis* v. *Lesauskis* (1981), 111 Mich. App. 811, 314 N.W. 2d 767; *Seniuta* v. *Seniuta* (1975), 31 Ill. App. 3d 408, 334 N.E. 2d 261; *Marshall* v. *Stefanides* (1973), 17 Md. App. 364, 302 A. 2d 682; *Duncan* v. *Duncan* (Mo. App. 1975), 528 S.W. 2d 806.

Therefore, we hold that an *in camera* interview of a child may be an appropriate method by which the trial court determines the child's best inter-

---

[6] The Commissioner's Comment to the Uniform Marriage and Divorce Act (1974), Section 404(a), states, in pertinent part:

"The general rule is that the judge may interview the child in chambers. It is often important for the judge to discover the attitudes and wishes of the child, and there is no reason to subject the child to the formali-

ty of the courtroom and the unpleasantness of cross-examination. This provision does not require the judge to permit counsel to be present at the interview, but he must make some kind of record of the interview (using a court reporter or a tape recorder) so that counsel for all parties will have access to the substance of the interview.
* * *"

est in visitation cases, even if one of the parties objects to such an interview.

## IV

The final issue we must decide is whether the trial court abused its discretion when it overruled appellee's motion for an *in camera* interview with the child.

A trial court's decision as to whether to interview a child cannot be reversed absent an abuse of discretion. See *In re Marriage of McKeever* (1983), 117 Ill. App. 3d 905, 453 N.E. 2d 1153; *In re Marriage of Rinow* (Colo. App. 1981), 624 P. 2d 365; *M D* v. *C D* (Mo. App. 1985), 691 S.W. 2d 406.

The standard for "abuse of discretion" in a domestic relations context was set out by this court in *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 219, 5 OBR 481, 482, 450 N.E. 2d 1140, 1142, where we stated: "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." In addition, "where the trial court completely misconstrues the letter and spirit of the law, it is clear that the court has been unreasonable and has abused its discretion." *Warner* v. *Waste Management, Inc.* (1988), 36 Ohio St. 3d 91, 99, 521 N.E. 2d 1091, 1098, at fn. 10.

In this case, since Shay was not eleven years old when the evidentiary hearing was held, the trial court was not required to ascertain the child's wishes concerning visitation pursuant to R.C. 3109.04(C)(2). Nevertheless, we hold that the trial court's failure to consider these wishes solely on the ground that an *in camera* interview was not stipulated by the parties was an abuse of discretion.

Therefore, while we agree with the appellate court that the trial court erred in overruling appellee's motion for an *in camera* interview, we disagree that this error precludes a reconsideration by the trial court. The appellate court applied the wrong standard of review. Instead of holding that the trial court abused its discretion, the appellate court independently weighed the evidence and found that grandparent visitation was not in the child's best interest.

We agree with the court of appeals that the judgment of the trial court must be reversed, but a new hearing shall be held on the visitation issue in which the trial court considers the wishes of the child.[7] For the foregoing reasons, the judgment of the court of appeals is affirmed in part, reversed in part, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part and*
*cause remanded.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS and H. BROWN, JJ., concur.

---

[7] On remand, Shay will be well over the age of eleven. Therefore, R.C. 3109.04 (C)(2) mandates that the trial court consider her wishes regarding visitation.

In addition, we agree with the court of appeals that the trial court should have considered the fact that the child's father (*i.e.*, appellants' son) had been convicted of abduction. But this is just one factor that the trial court should consider in determining the child's best interest. Of course, if on remand the trial court decides to grant visitation, it can require that the child's father not be present in the grandparents' home on visitation days. In addition, should it later be determined that such visitation is not in the best interest of the child, it is within the continuing jurisdiction of the court to modify its order and deny visitation thereafter.