OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

In re Martin.
[Cite as In re Martin (1994),        Ohio St. 3d      .]
Juvenile law -- Grandparent visitation authorized, when --
     Grandparents not qualified even to seek court ordered
     right to visit putative biological grandchild until the
     alleged paternity of the grandchild is established under
     either of the methods set forth in R.C. 3109.12 -- R.C.
     3107.15 does not distinguish between adoptions by
     strangers and nonstrangers.
     (No. 92-1865 -- Submitted September 28, 1993 -- Decided
February 4, 1994.)
     Appeal from the Court of Appeals for Monroe County, No.
692.
     Karissa Renee Martin was born May 27, 1988.  On the birth
certificate, Robin Renee Martin is listed as the mother and
Bradley Allen Hupp is listed as the father.  Appellants, Ronald
E. and Sheila M. Martin, are the parents of Robin Martin.
Appellees, Terry L. and Rhea J. Hupp, are the parents of
Bradley Hupp.
     There is no evidence in the record that Bradley Hupp and
Robin Martin have ever been married, or that Bradley Hupp has
filed a legitimation petition, or that a paternity action has
been filed to determine if Bradley is the father of Karissa.
     The Probate Court of Monroe County granted appellants'
petition to adopt Karissa.
     In June 1991, appellees filed a petition in the court of
common pleas, juvenile division, requesting visitation rights
with Karissa pursuant to R.C. 3109.12.  Appellees alleged that
they are her paternal grandparents, and that an order granting
them visitation rights would be in her best interests.  A
hearing on the matter was held, and in an opinion dated June
27, 1991, the trial court stated in part:
     "The evidence did not convince the Court that the
visitation would be in the best interests of the child.
     "The request for visitation is denied.  This does not
prevent the adoptive parents from voluntarily permitting their
adopted daughter [to see] the applicants if they feel it will
be in her best interest."

The trial court subsequently issued findings of fact and conclusions of law, which stated in part:

"A.  A Final Decree of Adoption has the effect of terminating any rights of the birth parents or his relations. The exception set forth in Section 3107.15 O.R.C. is inapplicable.

"B.  Section 3109.12 O.R.C. authorizes the Court to permit visitation where such visitation is in the best interest of the child.  The persons seeking visitation must establish, by at least a preponderance of the evidence, that such visitation would be in the child's best interests."

Upon appeal, the court of appeals reversed and remanded in a split decision.  The majority held that because Bradley Hupp's name appeared on the child's birth certificate, R.C. 3111.03(A) rendered him the presumptive father of the child, and that since the presumption was never rebutted, "[i]t must be taken, for the purposes of this case, that [Bradley Hupp] is the father of the child."  The court of appeals concluded that since the trial court "gave very little consideration to whether visitation is actually in the best interest of the child," it had to remand the case to the trial court in order to hear evidence as to the best interest of the child.

The dissenting judge reasoned as follows:

"The potential evil which I see in the reversal of the trial court's judgment is the legal fact that there has been no final judgment in any court determining the son of the applicants to be the father of the baby involved.  Tomorrow or years from tomorrow, a male could step forth acclaiming himself to be the father of the child and, through legal proceedings, be determined to be the natural father of a child.

"It is my opinion that the legislature, in adopting prerequisites in R.C. 3109.12(A)[,] faced this possibility when it established that a father of the child, in visitation proceedings, must have first acknowledged the child pursuant to R.C. 2105.18 or have been determined in an action under [R.C.] Chapter 3111. to be the father of the child."

The cause is now before this court pursuant to the allowance of a motion to certify the record.

Isaac, Brant, Ledman & Becker and Randy S. Kurek, for appellants.

Burech & Sargus and Edmund A. Sargus, Jr., for appellees.

Albers & Albers and James S. Albers, urging reversal for amicus curiae, National Council for Adoption.

A.William Sweeney, J.    In the instant cause, we are again requested to consider whether Ohio law permits grandparent visitation rights subsequent to an adoption.  In the case of In re Adoption of Ridenour (1991), 61 Ohio St.3d 319, 574 N.E.2d 1055, we held that R.C. 3107.15 1  does not permit visitation by grandparents after adoption by strangers. Here, we are asked to consider post-adoption visitation where the child has been adopted by grandparents.

By way of background, we note that this court has observed that at common law, grandparents had no legal rights of access to their grandchildren.  In re Whitaker (1988), 36 Ohio St.3d 213, 214, 522 N.E. 2d 563, 565.  In addition we have held that

grandparents have no constitutional right of association with their grandchildren. In re Schmidt (1986), 25 Ohio St.3d 331, 336, 25 OBR 386, 390, 496 N.E.2d 952, 957. This court has also stated that if grandparents are to have visitation rights, they must be provided for by statute, and that the Ohio statutes allow visitation only if it is in the grandchildren's best interest. Whitaker, 36 Ohio St.3d at 217, 552 N.E.2d at 267. More recently, in Ridenour, 61 Ohio St.3d, at 325, 574 N.E.2d at 1061, we observed that R.C. 3107.15 suggests that grandchildren's relationships with their biological grandparents "must be terminated once they are adopted."

The General Assembly has authorized grandparent visitation in three situations: (1) in divorce, dissolution, legal separation, or annulment proceedings (R.C. 3109.051); (2) where the parent of the child is deceased (R.C. 3109.11); and (3) where the child is born to an unmarried mother, and the father has either acknowledged paternity of the child pursuant to R.C. 2105.18, or has been determined to be the child's father in an action brought under R.C. Chapter 3111 (R.C. 3109.12[A]).

The third situation is implicated in the cause sub judice. R.C. 3109.12 provides in relevant part:

"(A) If a child is born to an unmarried woman, the parents of the woman and any relative of the woman may file a complaint requesting the court of common pleas of the county in which the child resides to grant them reasonable companionship or visitation rights with the child. If a child is born to an unmarried woman and if the father of the child has acknowledged the child pursuant to section 2105.18 of the Revised Code or has been determined in an action under Chapter 3111. of the Revised Code to be the father of the child, the father, the parents of the father, and any relative of the father may file a complaint requesting the court of common pleas of the county in which the child resides to grant them reasonable companionship or visitation rights with respect to the child.

"(B) The court may grant the companionship or visitation rights requested under division (A) of this section, if it determines that the granting of the companionship or visitation rights is in the best interest of the child. ***" (Emphasis added.)

Appellees presented no evidence that the paternity of Karissa had been established pursuant to the above-emphasized language. Therefore, appellees' son is legally nothing more than the putative father of Karissa. Consequently, under the plain language of R.C. 3109.12, the appellees are not qualified even to seek any court-ordered right to visit their putative biological grandchild, until the alleged paternity of the grandchild is established under either of the methods set forth in the statute. Therefore, the court of appeals below erred in excusing compliance with R.C. 3109.12 in its reversal of the judgment of the trial court.

Nevertheless, given the fact that the paternity of the minor child herein was never seriously questioned in the proceedings below, we deem it appropriate to address the contentions of the parties assuming, arguendo, that Bradley Hupp is in fact the father of Karissa Martin. While lack of compliance with R.C. 3109.12 prevents grandparent visitation in the instant factual setting, R.C. 3107.15, as will be explained

below, would preclude grandparent visitation even if paternity were established.

In Ridenour, 61 Ohio St.3d at 328, 574 N.E.2d at 1063, this court stated that "[a]lthough there may be cases where a child who is adopted by strangers would benefit from continued interaction with his biological grandparents, we cannot permit such a result unless the legislature modifies R.C. 3107.15."

Appellees argue that the policy reasons stated in Ridenour concerning the termination of grandparents' visitation after adoptions by strangers are absent in cases where the relevant parties are, as in this case, nonstrangers to the child. Therefore, appellees contend that this court should distinguish between adoptions by strangers and nonstrangers and limit the rationale of Ridenour to adoptions by strangers.

With respect to appellees' argument that in determining grandparent visitation rights a distinction should exist between adoptions by strangers and nonstrangers, we noted in Ridenour, 61 Ohio St.3d at 327, 574 N.E.2d at 1062, that at least five states (Missouri, California, Massachusetts, Minnesota and Montana) permit grandparent visitation after a stepparent adoption, but specifically terminate or authorize termination of grandparent visitation rights if the child is adopted by a stranger. Moreover, at least one state supreme court appears to have espoused the distinction urged by appellees. See Lingwall v. Hoener (1985), 108 Ill. 2d 206, 213-214, 483 N.E.2d 512, 516. However, we discern no mandate or suggestion to make such a distinction in any of the relevant Ohio statutes, especially R.C. 3107.15, nor do we feel compelled to limit or modify our prior decision in Ridenour.

Given the fact that this court has consistently held that grandparent visitation rights are purely statutory in nature, Whitaker and Ridenour, supra, we believe that any changes in this area of the law must emanate from the General Assembly. While we are mindful of the compelling public policy reasons favoring grandparent visitation rights after adoptions by relatives, see, e.g., Lingwall, supra, R.C. 3107.15 simply does not distinguish between adoptions by strangers and nonstrangers.

Therefore, based on all of the foregoing, we reverse the judgment of the court of appeals below and reinstate the trial court's judgment.

Judgment reversed.

Moyer, C.J., Douglas, Wright, Resnick and F.E. Sweeney, JJ., concur.

Pfeifer, J., dissents.


FOOTNOTE:
    1   R.C. 3107.15(A) provides as follows:
    "(A) A final decree of adoption and an interlocutory order of adoption that has become final, issued by a court of this state, shall have the following effects as to all matters within the jurisdiction or before a court of this state:
    "(1) Except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and his relatives, including his biological or other legal parents, so that the adopted person

thereafter is a stranger to his former relatives for all purposes including inheritance and the interpretation or construction of documents, statutes, and instruments, where executed before or after the adoption is decreed, which do not expressly include the person by name or by some designation not based on a parent and child or blood relationship;

"(2) To create the relationship of parent and child between petitioner and the adopted person, as if the adopted person were a legitimate blood descendant of the petitioner, for all purposes including inheritance and applicability of statutes, documents, and instruments, whether executed before or after the adoption is decreed, which do not expressly exclude an adopted person from their operation or effect."