OPINION
{¶ 1} This appeal is taken from a final judgment of the Juvenile Division of the Portage County Court of Common Pleas. Appellant, David Funk, appeals from the juvenile court's order terminating his parental rights and granting permanent custody of his two minor children, Destiny and Derreck Funk, to appellee, Portage County Department of Job and Family Services ("PCDJFS").
{¶ 2} The following facts are relevant to this appeal. In August 2000, the juvenile court ordered that appellant's four children be removed from the family home and placed in foster care after PCDJFS learned of sexual abuse between the siblings.[1] After approximately sixteen months of temporary custody, PCDJFS determined that the children could not be returned to appellant and filed a motion requesting that the juvenile court grant permanent custody of Destiny and Derreck to the agency.[2]
{¶ 3} On February 22, 2002, appellant filed a request for production of documents in which he asked for, among other things, any material relating to the treatment of him and his two children. Appellant also filed a motion requesting that the juvenile court conduct an in camera interview of Destiny and Derreck before rendering a final decision.
{¶ 4} The permanent custody hearing took place on March 8, 2002. However, before the proceedings began, appellant filed a motion in limine to exclude the testimony of and any reports generated by Dr. Gail Post-Pincheck ("Dr. Pincheck") and Theresa Atkins ("Ms. Atkins"). As grounds for his motion, appellant argued that although he had filed a request for production of documents, Ms. Atkins had deliberately withheld Dr. Pincheck's notes relating to her treatment of the children. As a result, appellant submitted that neither Dr. Pincheck nor Ms. Atkins should be allowed to testify about what was in those notes because the withholding of this information had prevented him from preparing an adequate defense.
{¶ 5} After denying both appellant's motion in limine and his request for an in camera interview of Destiny and Derreck, the juvenile court heard testimony from several witnesses. Dr. Pincheck, who is a clinical psychologist with Summit Psychological Associates, Incorporated, testified that she had been treating both children since July 2000. While both Destiny and Derreck had made significant progress during this time, they still needed "an environment where there were adults who are available to them on a regular basis; who are home when the children are home; who provide structure in terms of chores; clear consistent rules about expectations for behavior; and, clear boundaries regarding adult issues versus child issues." To that end, Dr. Pincheck testified that appellant, as a person suffering from a major depressive disorder, would not be able to provide such an environment, as a "parent who is not receiving treatment for their own [condition], would be unable to assist [the children] in building their own skill and managing it." As a result, Dr. Pincheck believed that "[i]t is not in [the children's] best interests at this time to be placed back with [appellant]."
{¶ 6} Next to testify was Dr. Timothy Khol ("Dr. Khol"), a psychologist with Robinson Associates, who conducted appellant's parental competence assessment. Dr. Khol testified that when he evaluated appellant, he administered several tests and determined that appellant suffered from a major depressive disorder. Appellant's condition "suggested a level of depression and confusion and suspiciousness that could be expected to interfere with his level of concentration and his frustration tolerance and his day to day functioning[,]" which, in turn, could affect his ability to act as parent to his children and deal with their sexual abuse. Specifically, Dr. Khol opined that the fact appellant was abused as a child "continue[d] to affect him[,]" and because he still struggled with the past abuse, appellant "would have difficulty counseling or guiding children through those issues that he [had] not satisfactorily resolved himself."
{¶ 7} Furthermore, according to Dr. Khol, appellant was "still very self absorbed and still feeling a great deal of distress and abandonment and * * * a lot of energy was required just to deal with his own negative thoughts and to mobilize himself to take care of himself." Appellant had "some significant characterlogical [sic] problems in terms of his needs to depend upon other people for support and for making his own decisions and in terms of having very negative expectations of both what he could accomplish himself and the extent to which he could depend upon other people to be there for him." Dr. Khol maintained that appellant had a "fatalistic attitude" and was reluctant to seek professional help because he thought "whatever [was] going to happen [was] going to happen." Although he was unaware if appellant had followed his advice, Dr. Khol testified that he had recommended that appellant seek further professional treatment, including counseling and medication, for his depression.
{¶ 8} Ms. Atkins, the PCDJFS case worker assigned to appellant's family, testified that after placing the children in foster care, she developed a case plan setting forth several objectives for appellant to accomplish. They included: (1) complete a psychological evaluation and any follow-up treatment recommendations; (2) assist PCDJFS in accurately assessing risk and help resolve areas of concern; (3) attend budget management counseling and follow any recommendations; (4) attend family therapy sessions with both Destiny and Derreck; and (5) attend parenting classes. On at least eight different occasions, Ms. Atkins met with appellant to review the case plan, emphasize the importance of completing every objective, and advise him that PCDJFS may seek permanent custody of the children if appellant failed to do so.
{¶ 9} Despite her efforts, Ms. Atkins testified that appellant failed to complete each case plan objective. In particular, although appellant had attended several sessions, he had failed to provide any proof that he had finished the budget counseling program. Furthermore, appellant admittedly had not sought further treatment for his depression as recommended by Dr. Khol because, as appellant told Ms. Atkins, "he [did] not need those services."[3]
{¶ 10} The juvenile court also considered the opinion of the children's guardian ad litem, Stephen Lawson ("Mr. Lawson"), who recommended that it would be in the children's best interests if the court granted PCDJFS permanent custody. Before making his recommendation, Mr. Lawson spoke with Dr. Pincheck who informed him that both Destiny and Derreck are in need of long term treatment to deal with the trauma of the sexual abuse, and required "stable, loving, safe family surroundings." Mr. Lawson also spoke with each child. While Derreck "spoke openly about his desire to be part of a safe environment[,]" Destiny "did not indicate openly one way or another[;]" however, Mr. Lawson believed that "[a]lthough guarded in the answers, * * * [the children] would rather be in a place of safety, and that their parents cannot provide that for them."
{¶ 11} Appellant was the final witness to testify at the permanent custody hearing. When questioned about the case plan objectives, appellant admitted that he knew of both Dr. Khol's recommendations concerning further treatment and the consequences if he did not comply. However, appellant claimed that he had been through similar treatment in the past and that it made him worse. Moreover, appellant also had issues with some of the people at PCDJFS. He told Ms. Atkins "that I don't trust them `cause they lied to me so much I wanted to see the psychological evaluation because none of them could give me it. They would never give it to me, so therefore I didn't. I wanted to see it in writing." Appellant went so far as to blame his attempted suicide in October 2000, on "what Child Services put [him] through."
{¶ 12} During cross-examination, appellant admitted that because he did not have medical insurance, providing the necessary counseling for Destiny and Derreck would be difficult. He also testified that having both children living in the same house might pose a problem due to the sexual abuse between the two in the past.
{¶ 13} After considering the evidence, the juvenile court issued its judgment in which it found, by clear and convincing evidence, that it was in the best interests of the children to grant permanent custody of Destiny and Derreck to PCDJFS. Specifically, the court found that appellant had "failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the children's home." The juvenile court also found that appellant had "a chronic illness that [was] so severe that it [made appellant] unable to provide an adequate permanent home for his children[,]" and that appellant had "failed to follow the treatment recommendations of Dr. Khol to deal with his mental health issues."
{¶ 14} From this decision, appellant filed a timely notice of appeal with this court. He now submits the following assignments of error for our consideration:
 {¶ 15} "[1.] The trial [court] erred to the prejudice of Father when it denied his Motion in Limine to exclude the testimony of State's expert Dr. Gail Post-Pincheck and Tersea Adkins [sic] at trial based upon the State's failure to provide counsel with the request[ed] discovery before trial.
 {¶ 16} "[2.] The trial [court] erred to the prejudice of Father when it denied his Motion for in-Camera Interview with the children at trial when there were vastly different reports concerning their desire to be reunified with their father.
 {¶ 17} "[3.] The trial [court] erred to the prejudice of Father when it granted the PCJFS's Motion for Permanent Custody against the manifest weight of the evidence."
{¶ 18} Under his first assignment of error, appellant argues that the juvenile court should have granted his motion in limine to exclude the testimony of and any reports generated by Dr. Pincheck and Ms. Atkins. In doing so, appellant maintains that he never filed a formal discovery request to compel PCDJFS to turn over the documents in question because in the past, his attorney and PCDJFS had conducted discovery on an informal basis, and there was never a need to make such a request. Furthermore, appellant claims that Ms. Atkins deliberately withheld Dr. Panchek's notes relating her treatment of the children, and that this prevented him from preparing an adequate defense.
{¶ 19} Generally speaking, the denial of a motion in limine rests within the sound discretion of the trial court. Harman Group CorporateFinance, Inc. v. Academy of Medicine of Columbus Franklin Cty.
(1994), 94 Ohio App.3d 712, 721. As a result, this court will not disturb the trial court's ruling unless there has been an abuse of discretion.Dubecky v. Horvitz Co. (1990), 64 Ohio App.3d 726, 742. An abuse of discretion connotes more than a mere error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
{¶ 20} When the juvenile court overruled appellant's motion in limine, the following conversation took place on the record:
 {¶ 21} "THE COURT: Well, let me make it clear. This thing was set for permanent custody on three (3) separate occasions. That the opportunity for formal discovery motions was available to the defense in this particular matter. It was not done until after this thing had been set twice, and, you know, I'm not going to grant the motion to continue or exclude the evidence. And, it's noted with all pieces of evidence. I mean I don't know whether you've seen any evidence in this particular matter or talked about any evidence, but I'll assume for purposes of the record that you haven't seen anything and let you continue that objection throughout the process. So, you don't have to renew it. Will that meet your needs, Mr. Reeves?
 {¶ 22} "MR. REEVES [appellant's attorney]: That will be fine, your Honor. I did want to note for the Record that based on my experience with this Court that we did handle Discovery on an informal basis for years in the past.
 {¶ 23} "THE COURT: It's the reason that the Supreme Court drafted the rules on discovery is to protect yourself from informal rules. So, they were always available to you. And, I'm not trying to give you a difficult time about this. Mr. Reeves, —
{¶ 24} "* * *
 {¶ 25} "THE COURT: — I just want to put on the Record the reason that the Court is not going to grant your motion to exclude the evidence or continue this case. You had plenty of opportunities. It's been set several times and if you needed this stuff and wanted to see it prior to the hearing, that it could have been done a long time ago. And, a motion to compel them to do this a long time ago could have been filed and it wasn't done. So, I'm overruling your motion but it's noted for the Record and the Record is protected for you and your client."
{¶ 26} Juv.R. 24(B) provides in part that "[i]f a request for discovery is refused, application may be made to the court for a written order granting the discovery." The purpose of this rule is to regulate "the procedure by which discovery can be obtained by court order, in the event that the person upon whom discovery is made refuses to comply with a request for discovery." Staff Notes to Juv.R. 24(B).
{¶ 27} Here, appellant concedes that after receiving no response to his request for documents, he never filed a motion to compel with the juvenile court. Instead, he waited until the day of the permanent custody hearing, nearly two weeks after filing his document request, to raise the issue with the court for the first time. Such delay is unacceptable under the circumstances in this case. Whether or not the parties informally conducted discovery in the past, there was a procedure available to obtain the desired information. Accordingly, we conclude that the juvenile court did not abuse its discretion when it denied appellant's motion in limine. See, e.g., In re Jeremy K. (July 27, 2001), 6th Dist. No. E-00-0051, 2001 WL 844649, at 3 ("Absent a motion to compel, the trial court in juvenile proceedings does not abuse its discretion in admitting evidence not previously disclosed by the state."). Appellant's first assignment of error has no merit.
{¶ 28} Under his second assignment, appellant argues that the juvenile court erred when it denied his motion for an in camera interview of Destiny and Derreck. Appellant maintains that during the hearing there was conflicting evidence presented concerning the children's desire to be reunited with their father. As such, appellant submits that by refusing to personally interview Destiny and Derreck, the juvenile court was unaware of the children's true wishes, as their guardian ad litem "never visited or even talked to either child!" We disagree.
{¶ 29} R.C. 2151.414(D) states that in determining the best interest of a child in a permanent custody action, the juvenile court must consider all relevant factors, including the wishes of the child. However, R.C. 2151.414(D)(2) clearly provides that a child's wishes may be "expressed directly by the child or through the child's guardian ad litem * * *[.]" (Emphasis added.) That is to say, a juvenile court has the option of either having the child assert his or her opinion, through, for example, an in-camera interview or testimony, or the court may rely upon the guardian ad litem's representations with respect to the child's desires. Because the juvenile court has a choice, the decision not to conduct an in camera interview will be reversed only if the court abused its discretion in declining to do so. See, e.g., In re Whitaker
(1988), 36 Ohio St.3d 213, 219 (holding that when determining visitation or custody issues, "[a] trial court's decision as to whether to interview a child cannot be reversed absent an abuse of discretion.").
{¶ 30} Having carefully considered the record, this court concludes that the juvenile court did not abuse its discretion in overruling appellant's motion for an in camera interview. In his brief appellant argues that the children's guardian ad litem, Mr. Lawson, never spoke with the children before giving his recommendation. Appellant, however, has provided no evidence to support his accusation.
{¶ 31} To the contrary, in his report, Mr. Lawson states when he discussed the children's treatment with Dr. Pincheck, she informed him that they were "in need of stable, loving, safe family surroundings." According to Mr. Lawson, "[t]his sentiment was echoed by the childrenupon their interviews." (Emphasis added.) Specifically, Derreck "spoke openly about his desire to be part of a safe environment[,]" while Destiny "did not indicate openly one way or another." Ultimately, Mr. Lawson determined that "[a]lthough guarded in the answers, it [was] obvious that they would rather be in a place of safety, and that their parents cannot provide that for them." Appellant's second assignment of error has no merit.
{¶ 32} In his third and final assignment of error, appellant argues that the juvenile court's decision to grant PCDJFS permanent custody of Destiny and Derreck was against the manifest weight of the evidence. Appellant maintains that he substantially completed all the objectives outlined in the case plan and did everything PCDJFS asked him to do to remedy the conditions that had initially caused the children to be placed outside the family home.
{¶ 33} R.C. 2151.414 sets forth the guidelines that a juvenile court must follow when deciding a motion for permanent custody. R.C.2151.414(A)(1) mandates that the juvenile court must schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
{¶ 34} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (1) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (2) the child is abandoned and the parents cannot be located; or (3) the child is orphaned and there are no relatives of the child who are able to take permanent custody.
{¶ 35} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis that the juvenile court must apply when ruling on a motion for permanent custody. In practice, the juvenile court will usually determine whether one of the three circumstances delineated in R.C. 2151.414(B)(1) through (3) is presented before proceeding to a determination regarding the best interest of the child.
{¶ 36} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the juvenile court must consider all relevant evidence before making this determination. The juvenile court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the conditions enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.
{¶ 37} Assuming the juvenile court ascertains that one of the three circumstances listed in R.C. 2151.414(B)(1) through (3) is presented, then the court proceeds to an analysis of the child's best interest. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates that the juvenile court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
{¶ 38} The juvenile court may terminate the rights of a natural parent and grant permanent custody of the child to the moving party only if it determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency that filed the motion, and that one of the three circumstances delineated in R.C. 2151.414(B)(1) through (3) is presented. Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In reHolcomb (1985), 18 Ohio St.3d 361, 368; Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus. An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence. In re Jacobs (Aug. 25, 2000), 11th Dist. No. 99-G-2231, 2000 WL 1227296, at 4. See, also, In re Litz, 11th Dist. No. 2001-G-2367, 2001-Ohio-8903, 2001 WL 1402653, at 5.
{¶ 39} In its judgment entry, the juvenile court made the initial determination under R.C. 2151.414(B)(1) that the children were neither abandoned nor orphaned, but that they could not be placed with appellant within a reasonable period of time and should not be placed with him. In doing so, the juvenile court found, by clear and convincing evidence, that despite "reasonable case planning and diligent efforts by [PCDJFS] to assist [appellant] in remedying the problems that initially caused the children to be placed outside the home, that [appellant had] failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the children's home." Specifically, appellant had "failed to utilize the medical, psychiatric, and psychological and other rehabilitative services made available to him by [PCDJFS]." See R.C. 2151.414(E)(1).
{¶ 40} Furthermore, the juvenile court was also concerned about appellant's depression and its effect on his ability to care for Destiny and Derreck. According to the juvenile court, appellant suffered from "a chronic mental illness that [was] so severe that it [made appellant] unable to provide an adequate permanent home for his children at the present time and, as anticipated, within one (1) year from the date of [the] Hearing." More importantly, appellant had failed to follow Dr. Khol's treatment recommendations to control his depression, and without treatment, appellant "would be unable to parent and counsel [sic] his children who were also victims." As a result, the juvenile court noted that appellant had "little insight or ability to understand the special needs of his children. He also has very little insight into his psychiatric and psychological needs and has done little to treat his chronic mental illness." See R.C. 2151.414(E)(2).
{¶ 41} The juvenile court then proceeded to the second prong of the statutory analysis; a determination that it was in the best interests of the children to grant permanent custody to PCDJFS. As part of its analysis, the juvenile court considered the following:
 {¶ 42} "1. The children are bonded with their father. [Appellant] has visited his children on 54 out of the 64 visitation opportunities. However on several of those visitation opportunities, [appellant] was inappropriate with his children threatening on two (2) occasions not to ever visit them again. The mother of the children * * * executed a Permanent Surrender of her parental rights in regard to the children, Derreck and Destiny Funk, on October 23, 2001. Derreck and Destiny have a strained relationship. Derreck does not trust his sister because she sexually abused him. The children are in separate foster homes. Derreck is in a therapeutic foster home because of his psychiatric issues. The children have had little contact with any relatives other than their mother and father. The children appear to be bonded to their foster care families.
 {¶ 43} "2. The Court considered the wishes of the children as expressed through their Case Worker, Teresa Adkins [sic] and their Guardian Ad-litem, Stephen Lawson. The children have indicated to Ms. Adkins [sic] that they wish to be in a safe stable environment. The Guardian Ad-litem recommends that the children be placed in the Permanent Custody of [PCDJFS] for purposes of Adoption."
 {¶ 44} "3. The children have been in the custody of their mother and father up to June 7th of 2000. From June 7th, 2000 to the date of this Hearing, the children haven been in the Temporary Custody of [PCDJFS]. The Court further finds that the children, Derreck and Destiny[,] have been in the Temporary Custody of [PCDJFS] for 20 consecutive months ending on or after March 18, 1999.
 {¶ 45} "4. These special needs children have a need for a legally secure permanent placement. That legally secure permanent placement cannot be with their father because of his severe mental health issues. There are not appropriate relatives who can provide a secure stable permanent placement for the children. The only way these children can be in a safe stable permanent environment is to place them in the Permanent Custody of [PCDJFS].
 {¶ 46} "5. The Court considered the factors in Section 2151.414(E)(7) to (11) and finds that none of the those sections apply to this case."
{¶ 47} Upon review of the record, we conclude that there was clear and convincing evidence to support the juvenile court's judgment. Although appellant certainly made progress with respect to the majority of the case plan objectives, his failure to seek the follow-up treatment recommended by Dr. Khol constitutes a significant failure. See, e.g., Inre Shchigelski (Oct. 20, 2000), 11th Dist. No. 99-G-2241, 2000 WL 1568388, at 5 (the issue is whether the parent has substantially remedied the conditions that caused the child's removal, not whether a parent has substantially complied with the case plan). The evidence shows that appellant suffers from a major depressive disorder that prevents him from providing his children with the safe, nurturing environment they require. Although no one questions his love for Destiny and Derreck, appellant is either unable or unwilling to take the necessary steps to control his illness. His failure to do so, in turn, hampers his ability to understand what his children are experiencing and assist them with their needs.
{¶ 48} Accordingly, the juvenile court's judgment granting permanent custody of Derreck and Destiny to PCDJFS is not against the manifest weight of the evidence. Appellant's third assignment of error has no merit.
{¶ 49} Based on the foregoing analysis, appellant's three assignments of error are not well-taken. The judgment of the juvenile court, therefore, is affirmed.
DIANE V. GRENDELL, J., concurs in judgment only with Concurring Opinion, WILLIAM M. O'NEILL, P.J., dissents with Dissenting Opinion.
[1] Although all four of appellant's children were removed, this appeal only involves the two youngest.
[2] The children's biological mother surrendered her parental rights and is not a party to this appeal.
[3] Ms. Atkins also testified that appellant had not attended family therapy sessions. However, she was unaware that Dr. Pincheck had asked appellant to attend only one session for each child because the first one had not been productive.