[Cite as *In re T.K.*, 2025-Ohio-75.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

IN RE:

        **CASE NO. 12-24-04**

    T.K.,

**ADJUDICATED DEPENDENT CHILD.**       **O P I N I O N**

**[MELISSA U. - APPELLANT]**

Appeal from Putnam County Common Pleas Court
Juvenile Division
Trial Court No. 20233001

**Judgment Affirmed**

**Date of Decision: January 13, 2025**

**APPEARANCES:**

    *Misty Wood* **for Appellant**

    *Gary L. Lammers* **for Appellee**

**WALDICK, P.J.**

{¶1} Mother-appellant, M.U. ("Mother"), brings this appeal from the April 25, 2024 judgment of the Putnam County Common Pleas Court, Juvenile Division. On appeal, Mother argues that the trial court abused its discretion by conducting an *in camera* interview with the minor child, T.K., over her objection. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} T.K. was born in November of 2010. Her parents are Mother and C.K. ("Father"). Notably, Mother and Father have not been in a relationship for a long time. For several years prior to the inception of this case, T.K. was living solely with Mother.

{¶3} On January 19, 2023, the Putnam County Department of Job and Family Services ("PCDJFS") filed a complaint alleging that T.K. was an abused, neglected, and dependent child. PCDJFS alleged that Mother, as the custodian of T.K., was not compliant with recommended medical and mental health treatment for T.K. after T.K. had emergency inpatient treatment for suicidal ideations on two separate occasions.

{¶4} After her inpatient treatment, a safety plan was created for T.K., which included her having no access to prescription or non-prescription drugs. However, Mother's home had "several bags of edible marijuana and three, thirteen-gallon

trash bags of medications" that were accessible to T.K. just days after T.K. was released from Sun Behavioral Health. Mother also did not take T.K. to her follow-up counseling appointments and T.K. was not consistently given her psychiatric medications.

**{¶5}** Further, PCDJFS noted that Mother had her own significant mental health concerns. In fact, Mother was found unresponsive on December 19, 2022. She was incoherent "and presented as a possible overdose." Less than a month later Mother was recommended for inpatient psychiatric treatment and she refused to stay.

**{¶6}** PCDJFS also alleged that Mother was not complying with the requirements to have T.K. attend school. T.K. had 56 hours of unexcused absences and 150 total absent hours from school. T.K. was failing all of her primary classes.

**{¶7}** The case proceeded to an adjudicatory hearing wherein both Mother and Father admitted that T.K. was a dependent child. In exchange for the parents' admissions, PCDJFS dismissed the allegations of abuse and neglect. T.K. was then placed in the temporary custody of K.W., a relative, with supervision provided by PCDJFS. This arrangement was maintained following the dispositional hearing.

**{¶8}** On September 27, 2023, Father filed a motion to modify the disposition, requesting custody of T.K.

{¶9} On October 6, 2023, Mother's attorney filed a request for a competency evaluation of Mother. That request was granted and Mother was found "not to be competent." As a result, a GAL was appointed for Mother.[1]

{¶10} On November 17, 2023, a hearing was held on Father's motion to modify disposition. Although Mother's attorney objected to Father being awarded temporary custody of T.K., Mother's GAL and T.K.'s GAL supported Father's motion. Ultimately the trial court determined that it was in T.K.'s best interests for Father to be granted temporary custody of T.K. with protective supervision provided by PCDJFS.

{¶11} On January 9, 2024, Father filed a motion for custody of T.K. and for the PCDJFS case to be terminated.

{¶12} On March 25, 2024, a hearing was held on Father's motion for custody. After considering the evidence, the recommendations of T.K.'s GAL and Mother's GAL, and the arguments of the parties, T.K. was placed in the custody of her Father. Further, PCDJFS's case was terminated, and Mother was granted supervised visitation.

{¶13} A final Judgment entry was filed April 25, 2024. It is from this judgment that Mother appeals, asserting the following assignment of error for our review.

---

[1] The competency evaluation is not included in our record.

**Assignment of Error**

**The trial court abused its discretion in overruling the objection to the in-camera review due to concerns that the child had been coached in the matter.**

{¶14} In her assignment of error, Mother argues that the trial court abused its discretion by interviewing T.K. *in camera* over Mother's objection.

Standard of Review

{¶15} "A trial court's decision as to whether to interview a child cannot be reversed absent an abuse of discretion." *In re Whitaker*, 36 Ohio St.3d 213, 219 (1988). A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

Analysis

{¶16} At the March 25, 2024 hearing on Father's motion for custody of T.K., Father requested that the trial court interview T.K. *in camera* to determine T.K.'s wishes. Mother's attorney objected to the trial court interviewing T.K., stating that she believed T.K. "might have been coached." (Tr. at 6). The trial court overruled Mother's objection and interviewed T.K. *in camera*.

{¶17} Mother now argues that the trial court abused its discretion by failing to conduct an inquiry regarding her concerns over T.K. potentially being coached.

She argues that she was prejudiced by the trial court's determination to interview T.K. *in camera*; however, she does not explain how the trial court's decision specifically prejudiced her. Similarly, she does not provide any case authority or legal support establishing how the trial court abused its discretion.

{¶18} In our own review of the matter, we emphasize that pursuant to R.C. 2151.23(F)(1), a "juvenile court shall exercise its jurisdiction in child custody matters in accordance with [*inter alia*] section[] 3109.04 . . . of the revised code." The interplay between R.C. 2151.23 and R.C. 3109.04 is important because R.C. 3109.04(B)(1) states that upon the request of either party, the trial court "*shall* interview [the child] in chambers[.]" (Emphasis added.) Given this clear statutory language, we can find no error here, let alone an abuse of discretion, where a trial court interviews a child after it has been specifically requested by a party because that is precisely what R.C. 3109.04(B)(1) requires.

{¶19} Moreover, we emphasize that Mother baldly asserted that she was concerned that T.K. had been coached, but she had no reasoning to support her suspicion. Further, we fail to see how even if there was error, there could be any prejudice here because T.K.'s GAL *and* Mother's GAL *both* recommended that Father be granted custody.

{¶20} In sum, Mother raised an unsupported objection to the trial court interviewing T.K. *in camera* and that objection was overruled. We find no error with the trial court's decision. Therefore, Mother's assignment of error is overruled.

*Conclusion*

**{¶21}** Having found no error prejudicial to Mother in the particulars assigned and argued, her assignment of error is overruled and the judgment of the Putnam County Common Pleas Court, Juvenile Division, is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and WILLAMOWSKI, J.J., concur.**

**/jlm**