OPINION
Appellant, Kennetha Hayes, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, terminating her parental rights and responsibilities with respect to her son, Devon Day, and awarding permanent custody to appellee, Franklin County Children's Services ("FCCS").
In March 1998, the court found Devon, then age two, to be a dependent minor and imposed an order of protective supervision. A guardian adlitem was appointed to protect Devon's interests. In September 1998, the court terminated the order of protective supervision and placed Devon in the temporary custody of FCCS. A case plan was created in an attempt to eventually reunite appellant and Devon. Under the objectives of the case plan, appellant was required to: (1) obtain treatment for her substance abuse problems; (2) obtain suitable housing; (3) participate in domestic violence counseling; and (4) attend parenting classes.
On May 14, 1999, FCCS filed a motion seeking permanent custody of Devon. On September 5, 2000, appellant filed a motion requesting the appointment of counsel to represent Devon's legal interests. Specifically, appellant alleged that Devon's desire to remain with appellant conflicted with the guardian ad litem's position that it would be in Devon's best interest for the court to grant permanent custody to FCCS. On the same day, appellant filed a subpoena duces tecum directing FCCS caseworker, Jennifer Butler, to bring Devon to the hearing scheduled for September 12, 2000.
Appellant did not attend the hearing. Counsel for appellant provided no explanation for appellant's absence. Indeed, counsel sought leave to withdraw as counsel, citing a four-month absence of communication with appellant. The court denied counsel's motion.
At the outset of the hearing, counsel for appellant addressed the pending motion requesting that the court appoint counsel to represent Devon due to an alleged conflict between Devon's wishes and the position taken by the guardian ad litem. Counsel stated that based upon his last contact with appellant some four months prior to the hearing he "had every indication to believe that the guardian ad litem's position, of being in favor of proceeding with the PCC would be in conflict with the child's own wishes to remain with the mother." (Tr. 11-12.) Counsel admitted that he had never met Devon and that the motion was borne out of conversations with appellant in which she stated that Devon had expressed a desire to live with her. However, counsel candidly acknowledged that he could not definitively confirm whether Devon had verbally expressed such a desire to appellant, or whether it was merely appellant's opinion, based upon her contact with Devon, that he wished to live with her.
The court inquired of the guardian ad litem directly as to whether he perceived any conflict. The guardian ad litem noted that his role in Devon's case was that of guardian ad litem only. He further averred that he would be willing to serve as Devon's counsel should the court find it necessary to appoint counsel, as Devon's wishes were consistent with his position as guardian ad litem. After confirming his understanding of his responsibility to inform the court of a conflict, the guardian ad litem
reported no conflict between his recommendation and Devon's wishes. To that end, the guardian ad litem stated that in interviews, Devon had expressed a desire to live in a permanent home with someone who would love and care for him. The guardian ad litem further averred that Devon was happy in his current foster placement and that the foster family was a prospective adoptive family. Although the guardian ad litem averred that Devon had "some type of bond" with appellant, he also opined that if appellant was not in a position to care for Devon, Devon would prefer to live with his foster family.
Counsel for appellant then requested that the court enforce the September 5, 1999 subpoena compelling Devon's testimony. The guardianad litem opposed the motion, stating that although Devon was capable of testifying as to what would make him happy, he was not capable of appreciating the issues to be determined at the hearing. In particular, the guardian ad litem averred that when he inquired of Devon what he wanted to tell the court, Devon responded that he wanted to tell the court that he wanted a toy. The court denied the motion to appoint counsel and refused to enforce the subpoena.
Ms. Butler, the FCCS caseworker who worked with appellant and Devon, provided the only testimony at the hearing. Ms. Butler testified that appellant had not fulfilled any of the four objectives set forth in the case plan. In particular, Ms. Butler noted that while appellant had participated in three separate substance abuse treatment programs, she had failed to complete any of them. Ms. Butler opined that appellant had not demonstrated sobriety, having submitted to only nine of sixteen drug screens, having tested positive at her last drug screen, and having admitted to the use of marijuana and cocaine in February 2000. Regarding the other objectives of the case plan, Ms. Butler testified that appellant had not fulfilled the objective of finding adequate independent housing, nor had she attended either domestic violence counseling or parenting classes.
Ms. Butler further testified that after Devon was placed in foster care, appellant had no contact with him for one full year. Thereafter, appellant visited him once in July 1999 and once in October 1999. She did not visit him again until January 2000, when she resumed regular visitation. Appellant terminated visitation in June 2000.
Ms. Butler also testified that Devon had been in four foster homes prior to his current foster placement, which began in April 1999. According to Ms. Butler, Devon appeared bonded to his foster family. She testified that FCCS's actions in seeking permanent custody of Devon were consistent with his wishes and desires. She further noted that the foster family had expressed interest in adopting him. She opined that Devon could not be safely placed in appellant's care, that he needed a legally secure permanent placement, and that it would be in his best interest to be permanently placed in the custody of FCCS for purposes of adoption.
Upon inquiry by the court, the guardian ad litem opined that based upon the testimony presented at the hearing, it was clear that appellant was not in the position to provide care for Devon. The guardian ad litem
further opined that Devon would benefit from a permanent, safe, nurturing environment and that it would be in Devon's best interest to be permanently committed to FCCS for purposes of adoption. The guardian adlitem stated that his opinion was based upon interviews with Devon conducted by both him and FCCS.
In its oral decision immediately following the hearing, the trial court stated:
 * * * [T]he motion of the Agency is granted by clear and convincing evidence. They have demonstrated the need for permanent custody of this child to have a secure environment. And there's no evidence in the contrary here whatsoever. I'd say beyond a reasonable doubt actually. So, the motion is granted. [Tr. 41.]
By judgment entry dated September 19, 2000, the court formalized its decision, finding as follows:
 Continuation in the child's own home would be contrary to the child's welfare and that reasonable efforts have been made to prevent or eliminate the need for removal of said child from the child's own home. Placement and casework services were provided by the Agency to the family of the child, but the removal of the child from home continues to be necessary because the circumstances giving rise to the original filing have not been sufficiently alleviated. * * *
Appellant timely appeals the judgment and advances the following three assignments of error:
 [1.] The trial court erred in granting permanent custody to Franklin County Children Services without expressly considering in its findings all of the factors regarding the best interest of the child pursuant to R.C. 2151.414(D), including the requirement that the court consider the wishes of the child, with due regard for the maturity of the child.[1]
 [2.] The trial court denied appellant due process of law by refusing to enforce her subpoena to compel the FCCS caseworker to bring the child to court in order to express his wishes regarding the prospect of adoption.
 [3.] The trial court erred in overruling appellant's motion to appoint an attorney for the child.
By the first assignment of error, appellant contends that the trial court erred in granting permanent custody to FCCS without expressly considering in either its written or oral findings the statutory factors set forth in R.C. 2151.414(D) with regard to Devon's best interest. In particular, appellant argues that, contrary to R.C. 2151.414(D)(2), the court failed to expressly state that it considered Devon's wishes in determining whether his best interest would be served by granting permanent custody to FCCS.
Generally, parents have a paramount right to custody of their minor children. See In re Murray (1990), 52 Ohio St.3d 155, 157. However, this right is not absolute. Pursuant to R.C. 2151.353(A)(4), before a trial court may commit a child to the permanent custody of a public children services agency, it must first determine "in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent" and "in accordance with division (D) of section2151.414 of the Revised Code that the permanent commitment is in the best interest of the child."
R.C. 2151.414(E) provides that in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court must consider "all relevant evidence." If the court determines, by clear and convincing evidence, that one or more of sixteen conditions exist, the court must enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. The factors applicable to this case are as follows:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *
 (2) Chronic * * * chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.] [R.C. 2151.14(E).]
With regard to the second criteria of R.C. 2151.353(A)(4), R.C.2151.414(D) provides that when determining the child's best interest, the court "shall consider all relevant factors, including, but not limited to, the following":
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of a public children services agency * * * under one or more separate orders of disposition issued under section 2151.353 or 2151.415 of the Revised Code for twelve or more months of a consecutive twenty-two month period ending on or after the effective date of this amendment;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (12) of this section apply in relation to the parents and child.
The factors set forth in R.C. 2151.414(E)(7) to (12) include whether the parents have been convicted of or pled guilty to various criminal offenses; whether medical treatment or food has been withheld from the child; whether the parent has placed the child at a substantial risk of harm due to alcohol or drug abuse; whether the parent has abandoned the child; whether the parent has had parental rights terminated with respect to a sibling of the child; and whether the parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing and will not be available to care for the child for at least eighteen months thereafter.
On appeal, an appellate court must determine if the trial court complied with the statutory requirements of R.C. 2151.353 and 2151.414
and whether there was sufficient evidence to support a finding by clear and convincing evidence that one or more of the factors listed in R.C.2151.414(E) exist. Permanent custody may not be granted unless the trial court finds clear and convincing evidence that one or more of the factors enumerated in R.C. 2151.414(E) exist. In re William S. (1996),75 Ohio St.3d 95, syllabus.[2] Clear and convincing evidence requires proof that "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Adoption ofHolcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus. The trial court must consider the best interest of the child by examining the factors listed in R.C. 2151.414(D). A reviewing court may not overturn a permanent custody order when it is supported by competent, credible evidence because a trial court, as the trier of fact, is in the best position to weigh the evidence and evaluate the testimony. In re Brofford (1992),83 Ohio App.3d 869, 876; In re Brown (1994), 98 Ohio App.3d 337, 342.
Initially, we note that the trial court's judgment in the instant case minimally complies with the mandate set forth in R.C. 2151.353(A)(4) and R.C. 2151.414(B)(1)(a), i.e., that the court determine that granting permanent custody of Devon to FCCS is in his best interest, and that he cannot be placed with either of his parents within a reasonable time or should not be placed with his parents. The trial court did not expressly state that permanent custody is in Devon's best interest; however, the trial court expressly found the converse, i.e, that continuation in his own home would be contrary to his welfare. Further, the trial court did not expressly state that Devon could not be placed with either of his parents within a reasonable time or should not be placed with his parents. However, the trial court found that appellant had not alleviated the conditions giving rise to Devon being removed from her custody, despite the fact that FCCS had provided casework services to her. This finding clearly corresponds to R.C. 2151.414(E)(1). Thus, without expressly stating, the trial court determined that it would be in Devon's best interest to grant permanent custody to FCCS and that he could not be placed with either of his parents within a reasonable time or should not be placed with his parents. While it would have been preferable for the trial court to make the express findings required by R.C. 2151.353(A)(4), given the record in this case, such findings are implicit in the decision. See In re Curtis (Apr. 20, 2000), Marion App. No. 9-99-74, unreported (failure of trial court to use the words "the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents" not per se violation of statutory criteria as long as judgment entry granting permanent custody supports such conclusion); In re Meyer (1994), 98 Ohio App.3d 189 (record supported finding that child could not be placed with the parents within a reasonable time despite the lack of express statement thereof in the judgment entry); In re Kelley (Aug. 15, 2000), Marion App. No. 9-2000-23, unreported (trial court's failure to reproduce exact statutory language cannot be prejudicial to the appellant).
The evidence offered at the hearing supports the trial court's R.C.2151.414(E)(1) finding. Ms. Butler testified that appellant had not fulfilled any of the four objectives set forth in the case plan that was developed for her. Further, our review of the record reveals that the evidence corresponds with at least two other R.C. 2151.414(E) factors. Ms. Butler testified that appellant has a significant substance abuse problem which has prevented her from providing an adequate permanent home for Devon. R.C. 2151.414(E)(2). Ms. Butler further testified that appellant has missed a significant number of visitations with Devon, including a full year after he was initially placed in foster care. R.C. 2151.414(E)(4).
Turning now to appellant's assigned error, we find appellant's argument unpersuasive. "A trial court is not required to specifically enumerate each factor under R.C. 2151.414(D) in its decision." In re Heyman (Aug. 13, 1996), Franklin App. No. 96APF02-194. Further, R.C. 2151.414(D) does not require that the trial court set forth the specific factual findings that correlate to the factors set forth in the statute unless a party requests findings of fact and conclusions of law. In re Covin (1982),8 Ohio App.3d 139, 141. Both R.C. 2151.353(A), which governs the disposition of dependent children generally, and R.C. 2151.414(C), which specifically governs a permanent custody motion, require a timely request for findings of fact and conclusions of law. The record in the instant case demonstrates that appellant made no written or oral request for findings of fact or conclusions of law prior to the permanent custody hearing, prior to the court's judgment granting permanent custody to FCCS or anytime thereafter. As a consequence, appellant has failed to demonstrate any error. In re Brandon M. (Apr. 17, 1998), Lucas App. No. L-97-1144, unreported; Curtis, supra; In Re Jennifer L. (May 1, 1998), Lucas App. No. L-97-1295; In re Eppinger (Feb. 24, 1994), Cuyahoga App. No. 64968, unreported. Furthermore, the trial court's failure to expressly take into account Devon's wishes was appropriate, given Devon's age (four years, ten months) at the time of the hearing. In re Campbell
(June 8, 2000), Franklin App. No. 99AP-986, unreported.
Moreover, we find that the evidence supports the trial court's conclusion that Devon's best interest would be served by granting permanent custody to FCCS. Both Ms. Butler and the guardian ad litem
opined that Devon is bonded with his foster family and that the foster family is a prospective adoptive family. R.C. 2151.414(D)(1). The guardian ad litem opined that Devon's best interest would be served by granting permanent custody of Devon to FCCS for purposes of adoption. R.C. 2151.414(D)(2). Ms. Butler testified that Devon had been in foster care due to appellant's substance abuse problems and had been in four separate foster homes prior to April 1999. R.C. 2151.414(D)(3). Finally, Ms. Butler opined that Devon needed a legally secure permanent placement, and that such need could not be satisfied by placement with appellant. R.C. 2151.414(D)(4). Accordingly, the first assignment of error is not well-taken.
By the second assignment of error, appellant contends that she was denied due process of law when the trial court refused to enforce her subpoena compelling Ms. Butler to bring Devon to court so that he could express his wishes regarding the prospect of adoption. The stated purpose for subpoenaing Devon was to establish that a conflict existed between the child's alleged wish that he remain with appellant, and the guardian ad litem's position that permanent commitment of Devon would be in his best interest. The basis for the allegation of conflict was appellant's nebulous allusion, through counsel, that Devon wished to reunify with her. As noted previously, no clarity was offered at the hearing to establish how appellant arrived at this claim. Appellant did not appear at the hearing. It is unknown if appellant was even aware of the subpoena; however, it is clear that appellant had not communicated with counsel for four months preceding the hearing. Moreover, counsel admitted that he was unable even to inform the court if appellant still opposed the motion for permanent custody. In addition, the guardian adlitem opposed the motion to compel Devon's testimony, averring that due to Devon's tender years, his testimony would be of little probative value. The Ohio Supreme Court has held that a trial court's decision as to whether to interview a child may not be reversed absent an abuse of discretion. In re Whitaker (1988), 36 Ohio St.3d 213, 218. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. For the foregoing reasons, we cannot find that the trial court abused its discretion in refusing to enforce the subpoena compelling Devon's testimony. Therefore, the second assignment of error is not well-taken.
By the third assignment of error, appellant asserts that because Devon's wishes were in conflict with the guardian ad litem's
recommendation regarding his best interest, the trial court abused its discretion in failing to appoint counsel to represent Devon's interests. Specifically, appellant argues that Devon expressed an interest in reunifying with her; that granting permanent custody was in direct conflict with this desire; and that since the guardian ad litem argued for permanent custody, he was acting against Devon's wishes; thus, independent counsel was required to advocate Devon's wishes.
The Ohio Supreme Court has held that the role of a guardian ad litem is different than the role of an attorney. In re Baby Girl Baxter (1985),17 Ohio St.3d 229, 232. The role of a guardian ad litem is to investigate the child's situation and then ask the court to do what is in the child's best interest, while the role of an attorney is to zealously represent his client within the bounds of the law. Id. "Absent a direct conflict between the recommendation of the guardian ad litem and the expressed wishes of children, Ohio courts traditionally have not required a separate appointment of counsel for children in custody cases." In reClark (Jan. 18, 2001), Cuyahoga App. No. 76852, unreported (Spellacy, J., dissenting).
As previously noted, no credible evidence was offered to establish that a conflict existed between Devon's wishes and the recommendation of the guardian ad litem. Appellant did not attend the hearing. The court questioned the guardian ad litem as to whether he perceived any conflict. The guardian ad litem stated unequivocally that he did not feel that any conflict existed. Indeed, the guardian ad litem averred that he could serve as appointed counsel for Devon because he was certain that Devon's wishes were consistent with his recommendation. Further, Ms. Butler testified that FCCS's actions in seeking permanent custody of Devon were consistent with his wishes. The only suggestion that a conflict existed came from appellant's counsel, who, as we have previously noted, offered only vague, unsubstantiated allegations as to Devon's wishes.
We find appellant's reliance on In re Stacy S. (Dec. 30, 1999), Lucas App. No. L-98-1213, unreported, to be misplaced. In that case, testimony was offered to the effect that notes kept by professionals treating the children suggested a desire to reunite the family which was so strong as to induce some of the children to fabricate "family secrets" in order to return home. As previously noted, no evidence of any kind was offered in the instant case to support appellant's claim that a conflict existed between Devon's desires and the recommendation of the guardian ad litem.
Accordingly, the court did not err by refusing to appoint counsel to represent Devon. Accordingly, the third assignment of error is not well-taken.
Having overruled all three of appellant's assignments of error, this court hereby affirms the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.
BROWN and TYACK, JJ., concur.
[1] We note that both in her brief and at oral argument, appellant asserted that the issue raised in this assignment of error was to be decided by the Ohio Supreme Court, who allowed a discretionary appeal. Accordingly, appellant requested that this court hold the instant case in abeyance pending the court's decision. However, the court has since dismissed Campbell, finding the discretionary appeal to have been improvidently allowed. In re Campbell (2001), 91 Ohio St.3d 1202.
[2] When William S. was decided, the precise issue before the court was "whether, in a termination of parental rights action, R.C. 2151.414(E) permits a trial court to find that a child cannot be placed with either of his parents within a reasonable time or should not be placed with the parents, absent a determination, by clear and convincing evidence, that one of the eight predicate findings in R.C. 2151.414(E) exists." Id. at 97. The court answered this question in the negative, holding, in the syllabus, that "[p]ermanent custody may not be granted unless the trial court finds clear and convincing evidence that one or more of the eight enumerated factors in R.C. 2151.414(E) exist." R.C. 2151.414(E) has been amended since William S. was decided. The statute, as it existed at the time of the filing of the motion for permanent custody in this case, permitted the trial court to find that a child cannot be placed with either parent within a reasonable time or should not be placed with the parents based upon the existence of "[a]ny other factor the court considers relevant." R.C. 2151.414(E)(16). Consequently, a trial court's determination need not rest on any one of the other specifically enumerated factors. Thus, the importance of the holding in William S.
has been greatly diminished.