OPINION
Defendant-appellant Malinda Boardman nka Malinda Balnites appeals from the November 20, 2000, Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division.
 STATEMENT OF THE FACTS AND CASE
Appellant Malinda Boardman nka Malinda Balnites is the mother of three children, namely, Emily Ann Boardman (DOB 3/09/90), Kelly Marie Boardman (DOB 7/05/91), and Dylan Michael Boardman (DOB 01/25/93). In December of 1996, appellant's husband, who was the children's father and appellee Gloria Boardman's son, died when he was electrocuted while giving himself a tattoo. Appellee is, therefore, the children's paternal grandmother.
On June 1, 1999, appellee, who resides in Texas, filed a motion for grandparent visitation pursuant to R.C. 3109.11[1] in the Stark County Court of Common Pleas, Juvenile Division. As memorialized in a Magistrate's Decision filed on June 29, 1999, appellee was awarded supervised visitation with her three grandchildren. No appeal was taken from such decision.
A second motion for grandparent visitation was filed by appellee on June 16, 2000. Appellee, in her motion, indicated that she would be in the Stark County area on or about August 1, 2000, and "would like to have visitation with the children."
A hearing on appellee's motion for grandparent visitation was held before a Magistrate on July 27, 2000. At the hearing, the Magistrate was presented with the Guardian Ad Litem's report and a report prepared by Elizabeth Henderson, Ph.D. The Guardian Ad Litem, in her July 2, 2000, report, recommended that appellee "should have plenty of visitation with these children" while appellee was in Ohio and that she "had yet to see anything" that concerned her about appellee. In contrast, Elizabeth A. Henderson, Ph.D., in her July 25, 2000, report, concluded as follows:
 In conclusion, the attachment needs of the children dictate that they should not be with their grandmother in an unsupervised setting until they and their mother feel comfortable with the situation. Visitation should be conducted in a supervised setting with either a neutral party present and/or the mother present in order to foster feelings of safety for the children and to establish a sense of trust. The children and their mother's concerns need to be taken into account in this regard and once trust is established, then supervision could slowly be eliminated. At this stage, taking the grandmother [sic] taking the children out of state would be [sic] not be recommended. Indeed, if the issue of child welfare is at question, having their mother present would help allay any anxieties or fears about the grandmother.
Pursuant to a Magistrate's Order that was adopted by the trial court on August 2, 2000, the following visitation schedule was established:
 Commencing 8-10-00 visit between children and paternal grandmother [appellee] shall visit in the mother's home with GAL [Guardian Ad Litem] present. Mother shall not be present for visit. The visit shall occur from 6:00 p.m.-8:00 p.m. Then on 8-11-00 the children and grandmother shall visit at Chuckie Cheese with GAL present. The visit shall occur 5:00 p.m.-8:00 p.m. and mother shall not be present except for pickup/dropoff. Barring a negative GAL follow up report the mother shall transport the children to Pitt [Pittsburgh] for a five (5) hour visit with paternal grandmother et al. from 12:00 p.m.-5:00 p.m. . . . Additional visits under advisement awaiting GAL input.
The Magistrate, in his order, indicated that he had reviewed and approved the Guardian Ad Litem's report and had reviewed the psychological report prepared by Elizabeth Henderson, Ph.D. Neither the Guardian Ad Litem nor the psychologist testified at the July 27, 2000, hearing. In fact, no sworn testimony was adduced at such hearing.
In accordance with the Magistrate's Order, visitation between appellee and her grandchildren occurred on August 10, 2000, and August 11, 2000. Thereafter, the Guardian Ad Litem, in a supplemental report filed on August 17, 2000, recommended that appellee receive unsupervised
visitation with the grandchildren, noting that the children "did not show any fear or apprehension around grandmother when they were away from their mother [appellant] or step-father." The Magistrate, in a decision dated August 17, 2000, stated that the Guardian Ad Litem's report was "reviewed and accepted" since visitation between appellee and her grandchildren was in the children's [sic] best interest. The Magistrate recommended that, commencing August 18, 2000, appellee be granted visitation pursuant to an attached schedule [referred to as modified Exhibit B]. Pursuant to such schedule, the Magistrate recommended that appellee be granted three weeks unsupervised visitation with her grandchildren during the summer months.
On August 17, 2000, appellant filed an objection to the Magistrate's Decision, arguing that "evidence was presented at the hearing on July 27, 2000, in the form of a psychological report indicating that unsupervised visitation would not be in the childrens' best interest at this time." Appellant further argued that, for such reason, the Magistrate abused his discretion and that his decision was contrary to law. Thereafter, a hearing was held before the trial court on November 20, 2000. At the hearing, appellant presented the trial court with a follow up report from Dr. Henderson dated October 5, 2000. Dr. Henderson, in her report, stated, in part, as follows:
 The children have only had a few contacts with their grandmother. She had not seen them for 3 years while the husband was alive and then she saw them once at the father's funeral and then 6 months later on a visit to their home. She saw them once last summer for 3 hours. On 7/14, the children indicated that they had no strong attachment to the grandmother. Since the court order, the children had one supervised visit at Chucky Cheese, one at home with the step-father and guardian present, and one with the grandmother and the childrens' great aunt. They [sic] went to Pennsylvania with the mother for a reunion wherein the grandmother was present. The childrens' responses were variable and ranged from neutral to upset. The grandmother had cussed during one of the visits, which disturbed them. The grandmother had driven the car into a cement parking log, and at the reunion, the grandmother had told them to leave without offering food because she was disturbed that the mother was present. These incidents do not bode well for later visitation events and indicate further conflict for the children.
No sworn testimony was adduced at such hearing.
As memorialized in a Judgment Entry filed on November 21, 2000, the trial court, after indicating that it had reviewed Dr. Henderson's report, overruled appellant's objection and approved and adopted the Magistrate's Decision.
It is from the trial court's November 21, 2000, Judgment Entry that appellant now prosecutes her appeal, raising the following assignments of error:
 ASSIGNMENT OF ERROR I THE TRIAL COURT'S ORDER SHOULD BE VACATED BECAUSE THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT FOUND THAT OHIO REVISED CODE SEC. 3109.11 IS CONSTITUTIONAL ON ITS FACE.
 ASSIGNMENT OF ERROR II ASSUMING ARGUENDO, THAT OHIO REVISED CODE SECTIONS 3109.11 IS CONSTITUTIONAL ON ITS FACE, APPELLANT'S CONSTITUTIONAL RIGHTS HAVE BEEN VIOLATED AS THE STATUTE HAS BEEN APPLIED.
 ASSIGNMENT OF ERROR III THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING AN EXTENSIVE AMOUNT OF VISITATION TO OUT OF STATE PATERNAL GRANDMOTHER.
For purposed of economy, we shall address appellant's assignments of error out of sequence.
 III
Appellant, in her third assignment of error, argues, in essence, that the trial court abused its discretion by awarding long distance visitation between appellee, who lives in Texas, and her grandchildren. We concur.
R.C. 3109.11 states, in part, as follows:
 If either the father or mother of an unmarried minor child is deceased, the court of common pleas of the county in which the minor child resides may grant the parents and other relatives of the deceased father or mother reasonable companionship or visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and if the court determines that the granting of the companionship or visitation rights is in the best interest of the minor child. In determining whether to grant any person reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code. Divisions (C), (K), and (L) of section 3109.051 of the Revised Code apply to the determination of reasonable companionship or visitation rights under this section and to any order granting any such rights that is issued under this section.
Since a trial court has discretion in determining whether or not to grant grandparent visitation pursuant to R.C. 3109.11, an abuse of discretion must be shown in order for an appellate court to reverse the trial court. See Gaffney v. Menrath (1999), 132 Ohio App.3d 113. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
Upon our review of the record in the case sub judice, we find the trial court abused its discretion in awarding unsupervised long distance visitation between appellee and her grandchildren. Pursuant to R.C.3109.11, grandparents may be granted visitation rights if the trial court finds such visitation is in the child's best interest. Gaffney, supra. R.C. 3109.051(D) lists fifteen factors that the trial court is to consider in determining what is in the best interest of a child. Among these factors is the mental and physical health of all parties. R.C.3109.051(D)(9).
In the case sub judice, there were contradictory opinions issued by the Guardian Ad Litem and Elizabeth Henderson, the psychologist retained by appellant as to appellant's parenting skills. The Guardian Ad Litem, in her July 20, 2000, report, questioned appellant's judgment in leaving her three children alone with their father, appellee's son, two days after he was released from prison[2]. The Guardian Ad Litem, in such report, further opined that appellant was coaching her children and questioned appellant's veracity in matters concerning appellee. The Guardian Ad Litem, in her supplemental report, further voiced concerns that appellant "does not approve of visitation . . . and has made her feelings known to these children." In short, the Guardian Ad Litem's opinion of appellant's judgment and parenting skills was far from favorable. In contrast, Elizabeth Henderson, Ph.D., in her October 5, 2000, report, indicated that appellant "can be described as an attentive and well-balanced parent" whose "judgment appears sound" and that she was impressed with appellant's parenting skills. While, as stated above, the Guardian Ad Litem opined that appellant was coaching her children, Dr. Henderson, in her report, indicated otherwise in stating as follows:
 There is no doubt regarding the fact that the children use the words, "Supervised" and "Unsupervised" and that they have absorbed these terms through the court process and through their experience in meetings as well as hearing conversations that their mother might have with others. I questioned the children on these statements, however, and they were aware of the meaning of them. They were used appropriately and in context. The children clearly do not want to say the "wrong thing" but this is for the very simple fact that they do not want to have visits with their grandmother without their mother present. They plainly are fearful of the court system and the possibility of their mother's judgments being usurped, which is why they appear to side together.
Furthermore, the opinions of the Guardian Ad Litem and the psychologist clearly conflict as to whether unsupervised visitation between appellee, who resides in Texas, and her grandchildren was in the childrens' best interest. The Guardian Ad Litem, in her supplemental report, recommended unsupervised visitation since the children "did not show any fear or apprehension around grandmother when they were away from their mother or step-father." Dr. Henderson, in her July 25, 2000, report, noted that the children "indicated that they did not wish to see their grandmother unsupervised" and that they "had expressed concern regarding her taking them out of state and were fearful that she would not return them." While, according to Dr. Henderson, the children were willing to see appellee, they were only willing to do so with their mother present and had no strong attachment to appellee. In her subsequent October 5, 2000, report, Dr. Henderson further opined that "[b]y ordering these children to go to Texas for unsupervised visits is an undermining of the mother's own parental authority and gives the children the message that their mother's judgment is not to be respected. This would produce feelings of anxiety and lack of safety."
Since there clearly were contradictory reports from the Guardian Ad Litem and Dr. Henderson, the psychologist, as to whether unsupervised visitation would be in the childrens' best interest, the trial court should have held an evidentiary hearing. At such hearing, witnesses would have testified under oath, counsel would have had the opportunity for cross-examination, and the hearing officer would have been able to better judge credibility. However, the trial court failed to do so. At neither the July 27, 2000, hearing before the Magistrate nor the November 20, 2000, hearing before the trial court was sworn testimony adduced from the Guardian Ad Litem, Dr. Henderson, either of the parties or anyone. In fact, the only evidence presented by appellee at the hearings were the Guardian Ad Litem's two reports.
Based on the foregoing, we find that, under the circumstances of this case, there was insufficient evidence supporting the trial court's decision that unsupervised long distance visitation with appellee was in the childrens' best interests. We find, therefore, that the trial court's decision was unreasonable and constituted an abuse of discretion.
Appellant's third assignment of error is sustained.
 I, II
Appellant, in her first two assignments of error, challenges the constitutionality of R.C. 3109.11. Appellant specifically contends that R.C. 3109.11 is unconstitutional on its face and as applied in the casesub judice.
Based on this court's disposition with respect to appellant's third assignment of error, we, need not reach the merits of the constitutional issues raised in appellant's first and second assignments of error. Furthermore, since appellant failed to raise her constitutional claims in the trial court, she has waived the right to raise such claims on appeal. State v. American Bail Bond Agency (1998), 129 Ohio App.3d 708.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Common Pleas Court, Juvenile Division, is reversed to the extent that it orders long distance visitation between appellee and her grandchildren. Appellee shall remain entitled to supervised visitation with her grandchildren in Ohio in accordance with Stark County Family Court Companionship modified Exhibit B. Costs to appellee.
Edwards, P.J. Gwin, J. and Farmer, J. concur.
[1] Such section is captioned "Companionship or Visitation Rights Where Parent is Deceased."
[2] Dr. Henderson, in her October 5, 2000, report, stated that appellant indicated that "this was a distortion and that the father had been in a rehabilitation center for several months after his period of incarceration and had been alcohol and drug free for a year the night he watched the children."